**UNITED STATES of America,**
**Plaintiff/Appellee,**

v.

**Juanita WHITE, Defendant/Appellant.**

No. 84–5141.

United States Court of Appeals,
Ninth Circuit.

Argued and Submitted Jan. 9, 1985.

Decided July 23, 1985.

Lynne Lasry, Asst. U.S. Atty., San Diego, Cal., for plaintiff/appellee.

Larry Ainbinder, FPD, San Diego, Cal., for defendant/appellant.

Before WALLACE, NELSON, and CANBY, Circuit Judges.

NELSON, Circuit Judge:

A jury found Juanita White guilty of two counts of transporting illegal aliens from Mexico into the United States. White contends that the district court erroneously denied her motion to suppress certain evidence as the fruits of an illegal search. We affirm the conviction.

## FACTS AND PROCEDURAL BACKGROUND

White was stopped at the San Clemente checkpoint in the early evening on Monday, February 6, 1984. A Border Patrol Agent observed that her car "was riding low in the rear." He noted that White, an attractive woman driving alone in a nice car, matched the common profile of drivers used by alien-smugglers. The agent approached White's car and pressed down on its trunk several times.[1] He found that the shocks were stiff, a condition which in his experience was common when a trunk was heavily loaded with people. He directed White to the secondary inspection area. There, she consented to a search of the trunk. Three undocumented aliens were found in the trunk. She was arrested and, several days later, indicted on two counts of smuggling illegal aliens in violation of 8 U.S.C. § 1324.

## DISCUSSION

White asserts that her fourth amendment rights were violated during primary inspection by the agent's application of pressure to her vehicle's exterior. She does not contest the district court's finding that she validly consented at secondary inspection to a search of the trunk. Nevertheless, we must consider the propriety of the agent's actions at the initial stop. *Cf. United States v. Cortez*, 449 U.S. 411, 421, 101 S.Ct. 690, 696, 66 L.Ed.2d 621 (1981) (initial stop at issue though search was consensual). We are therefore presented with a narrow issue concerning traffic checks at the permanent border checkpoint at San Clemente, California, the very location at which the Supreme Court approved routine stops for brief questioning and visual inspection of vehicles. *United States v. Martinez-Fuerte*, 428 U.S. 543, 562 n. 15, 96 S.Ct. 3074, 3085 n. 15, 49 L.Ed.2d 1116 (1976). We are guided by *Martinez-Fuerte* in this case as well.

Under *Martinez-Fuerte*, the border agent was authorized to stop White at primary inspection even absent "individualized suspicion." *Martinez-Fuerte*, 428 U.S. at 562, 96 S.Ct. at 3085. He had "wide discretion" to refer her to secondary inspection, *id.* at 564, 96 S.Ct. at 3085, even without "particularized reasons." *Id.* at 563, 96 S.Ct. at 3085. Nevertheless, the government concedes that the referral of White was predicated upon the vehicle's reaction to the agent's pressure; had the shocks bounced back, the agent would not have sent White to secondary inspection. We give careful consideration to White's claim because "[t]he principal protection of Fourth Amendment rights at checkpoints lies in appropriate limitations on the scope

---

1. The government alleges that White's response to the agent's initial bounce on the car—she pulled the car forward—increased his suspicion. Since White challenges only the agent's pushing down on the car, not the referral to the secondary inspection area nor the consensual search there, we do not consider White's reaction in assessing the propriety of the agent's action.

*United States v. Morrison*, 546 F.2d 319, 320 (9th Cir.1976) (per curiam). *See United States v. Doe*, 701 F.2d 819, 821 (9th Cir.1983). We note White's argument that her conviction was influenced by evidence of this reaction, which the government introduced to refute White's defense that she was unaware that the trunk contained three people.

of the stop." *Id.* at 566–67, 96 S.Ct. at 3087 (citations omitted).

■ The degree of protection supplied by the fourth amendment in this context is influenced by the setting—here, an automobile stopped at a permanent border checkpoint. *See United States v. Johns,* —— U.S. ——, 105 S.Ct. 881, 885, 83 L.Ed.2d 890 (1985); *United States v. Ross,* 456 U.S. 798, 823, 102 S.Ct. 2157, 2172, 72 L.Ed.2d 572 (1982). In this setting, *Martinez-Fuerte* directs us to balance the nature and quality of the intrusion upon White's fourth amendment interests against the public interests served by the intrusion. 428 U.S. at 555, 96 S.Ct. at 3081. *See, e.g., Texas v. Brown,* 460 U.S. 730, 739, 103 S.Ct. 1535, 1540, 75 L.Ed.2d 502 (1983); *Delaware v. Prouse,* 440 U.S. 648, 654, 99 S.Ct. 1391, 1396, 59 L.Ed.2d 660 (1979). The fourth amendment prohibits only *unreasonable* searches, *see South Dakota v. Opperman,* 428 U.S. 364, 372–73, 96 S.Ct. 3092, 3098–99, 49 L.Ed.2d 1000 (1976), and reasonableness is determined under the circumstances of each case. If the challenged action is minimally intrusive, it may be reasonable in view of the government interests it serves. *See Martinez-Fuerte,* 428 U.S. at 557–560, 96 S.Ct. at 3082–3084 (stop at permanent checkpoint). *See, e.g., United States v. Place,* 462 U.S. 696, 707, 103 S.Ct. 2637, 2644, 77 L.Ed.2d 110 (1983) (trained canine sniffing luggage).

## I.  *Degree of intrusion upon White's fourth amendment rights.*

■ For the first part of the balancing inquiry, we note that the fourth amendment protects White's interests in privacy and personal security in the context of a vehicle stop by the Border Patrol. *See Martinez-Fuerte,* 428 U.S. at 554–55, 96 S.Ct. at 3081. We therefore consider her expectations of privacy in the information exposed by the intrusion—whether her car was heavily laden. The presence of a privacy expectation is essential in determining the extent of intrusion under the fourth amendment. *See United States v. Jacob-*

*sen,* 466 U.S. 109, 104 S.Ct. 1652, 1656, 80 L.Ed. 85 (1984); *Katz v. United States,* 389 U.S. 347, 351–52, 88 S.Ct. 507, 511, 19 L.Ed.2d 576 (1967). *Cf. United States v. Murphree,* 497 F.2d 395, 396 (9th Cir.) (border inspector's request to roll up sleeves was not search since exposure of arms did not intrude on privacy), *cert. denied,* 419 U.S. 863, 95 S.Ct. 116, 42 L.Ed.2d 99 (1974).

■ White chose to drive the vehicle over the public highways. She thus undermined her privacy expectation in any information which was thereby disclosed about the vehicle. *See United States v. Knotts,* 460 U.S. 276, 281, 103 S.Ct. 1081, 1085, 75 L.Ed.2d 55 (1983). Courts have often recognized that visual observation of a moving vehicle may reveal that it is heavily laden. *See, e.g., United States v. Brignoni-Ponce,* 422 U.S. 873, 885, 95 S.Ct. 2574, 2582, 45 L.Ed.2d 607 (1975); *United States v. Harrington,* 636 F.2d 1182, 1184 (9th Cir.1980). Moreover, the weight of White's car could have been readily ascertained for regulatory purposes under the "pervasive regulation" of traveling vehicles which is one source of limitations on legitimate expectations of privacy in automobiles. *See California v. Carney,* —— U.S. ——, 105 S.Ct. 2066, 2069, 85 L.Ed.2d 406 (1985); *United States v. One 1977 Mercedes Benz,* 708 F.2d 444, 448 (9th Cir.1983), *cert. denied,* —— U.S. ——, 104 S.Ct. 981, 79 L.Ed.2d 217 (1984).

The agent did not observe White's car in motion, however, and his action cannot be justified as intended to enforce highway rules, since its goal was to investigate potentially criminal activity. *See Brignoni-Ponce,* 422 U.S. at 883 n. 8, 95 S.Ct. at 2581 n. 8. This Circuit has described such an application of pressure to a vehicle as "of an investigative or interrogative nature." *United States v. Pruitt,* 719 F.2d 975, 977 (9th Cir.) (per curiam), *cert. denied,* —— U.S. ——, 104 S.Ct. 536, 78 L.Ed.2d 716 (1983). White insists that this conduct is identical to other conduct which we have termed "searches." *Cf. United States v. Portillo-Reyes,* 529 F.2d 844, 848 (9th Cir.

1975) (insertion of key in lock of car constituted beginning of search), *cert. denied,* 429 U.S. 899, 97 S.Ct. 267, 50 L.Ed.2d 185 (1976); *Hernandez v. United States,* 353 F.2d 624, 626 (9th Cir.1965) (squeezing suitcase to expel marijuana fumes), *cert. denied,* 384 U.S. 1008, 86 S.Ct. 1972, 16 L.Ed.2d 1021 (1966). We do not find these cases indistinguishable,[2] but neither are we convinced that the agent's conduct was *not* a search.[3]

In considering the extent of the intrusion upon White, we also note that the agent's application of pressure to the vehicle was narrowly tailored to investigate the low ride of the car as one of the circumstances which provoked his suspicion. This limitation, as commanded by *Brignoni-Ponce,* was triggered by specific observations which caused the agent to suspect wrongdoing and was confined to the specific circumstance he observed. 422 U.S. at 881, 95 S.Ct. at 2580 (citing *Terry v. Ohio,* 392 U.S. 1, 29, 88 S.Ct. 1868, 1883, 20 L.Ed.2d 383 (1968)). *See also United States v. Palmer,* 575 F.2d 721, 723 (9th Cir.) (approving customs inspector's request to woman who walked stiffly to lift her skirt, because intrusion did not go beyond investigation of observed suspicious behavior), *cert. denied,* 439 U.S. 875, 99 S.Ct. 212, 58 L.Ed.2d 189 (1978).

We look next to the line of fourth amendment cases in the automobile context. We note that to identify a vehicle, officers may scrutinize its exterior to the extent of scraping off a paint sample and making a cast of the tire tread—and neither action will constitute a "search." *Cardwell v. Lewis,* 417 U.S. 583, 588–89, 591–92, 94 S.Ct. 2464, 2468, 2469–70, 41 L.Ed.2d 325 (1974) (plurality opinion). *See also United States v. DeBardeleben,* 740 F.2d 440, 444–45 (6th Cir.) (discussing intrusions permissible for limited purpose of identification of vehicle; no legitimate expectation of privacy in vehicle identity), *cert. denied,* —— U.S. ——, 105 S.Ct. 448, 83 L.Ed.2d 373 (1984). An officer may use a flashlight to view the interior of a vehicle through its windows without transgressing the fourth amendment. *Texas v. Brown,* 460 U.S. 730, 739–40, 103 S.Ct. 1535, 1540–41, 75 L.Ed.2d 502 (1983). When our court has considered an officer's physical intrusion upon a vehicle, however, even for the limited purpose of its identification, we have been unable to define a bright line between "no search" and "search but not unreasonable." *See Cotton v. United States,* 371 F.2d 385, 392–93 (9th Cir.1967) (ruling in the alternative that opening door to locate vehicle identification number is either no search or reasonable search); *Pasterchik v. United States,* 400 F.2d 696,

---

**2.** The expectation of privacy in the contents of personal baggage, which in *Hernandez* had been locked and checked with an airline, 353 F.2d at 626, is substantially greater than that in an automobile. *See United States v. Chadwick,* 433 U.S. 1, 13, 97 S.Ct. 2476, 2484, 53 L.Ed.2d 538 (1977). Moreover, the *Hernandez* holding has been limited to an officer's squeezing a suitcase to expel fumes and thereby causing exposure of its contents to the public. *See United States v. Johnston,* 497 F.2d 397, 398 (9th Cir.1974) (*Hernandez* does not bar smelling of fumes which exuded from undisturbed luggage). *Portillo-Reyes,* as the government contends, involved an intrusion into the interior of an automobile without probable cause. *See* 529 F.2d at 848.

**3.** Two recent Supreme Court opinions have held that specific "limited intrusions" were not searches. *See Jacobsen,* 104 S.Ct. at 1662 (testing substance to determine if it is cocaine); *Place,* 462 U.S. at 707, 103 S.Ct. at 2644 (canine sniffing luggage at airport to detect marijuana

fumes). These cases are clearly distinguishable since they involved neither automobiles nor border stops. Moreover, these holdings were explicitly premised upon reasoning inapplicable to White's situation: that the limited intrusion immediately detected the presence of contraband and would have revealed nothing about the container's contents had these been non-contraband. *Jacobsen,* 104 S.Ct. at 1662 & n. 24 (citing *Place,* 462 U.S. at 707, 103 S.Ct. at 2644). In contrast, this agent's testing of White's car could not immediately determine whether her trunk contained contraband or an innocent cargo of heavy objects. *See Brignoni-Ponce,* 422 U.S. at 889–90, 95 S.Ct. at 2584 (Douglas, J., concurring) ("The vacationer whose car is weighted down with luggage will find no comfort in these decisions ... [Approving a stop because the car appears heavy is] the flimsiest of justifications."). This test freed from further detention all motorists with empty trunks, rather than releasing all those without contraband cargo.

700 (9th Cir.1968) (same—opening hood and door), *cert. denied*, 395 U.S. 982, 89 S.Ct. 2142, 23 L.Ed.2d 770 (1969). *See, e.g., United States v. Arredondo-Hernandez*, 574 F.2d 1312, 1314 n. 1 (5th Cir.1978).

Yet a decision whether this action constituted a "search" is not essential to resolve this case, for we may affirm the district court's decision that White's fourth amendment rights were not violated if the agent's action was a *reasonable* intrusion. We therefore proceed to analysis of that issue, assuming *arguendo* that a search occurred.

II. *Considering the intrusion in the context of the public interests it served.*

█ In this part of the balancing test, we evaluate the circumstances of the agent's action in the context of the public interests served by such a practice. *Martinez-Fuerte* set forth the public interests relevant to the permanent checkpoint: to control the flow of smugglers and illegal aliens, 428 U.S. at 557, 96 S.Ct. at 3082; to minimize the intrusion upon each scrutinized traveller, *id.* at 554–560, 96 S.Ct. at 3081–3084; and to reduce the degree of interference with legitimate traffic. *Id.* at 558, 96 S.Ct. at 3083 (citing *Brignoni-Ponce*, 422 U.S. at 882–83, 95 S.Ct. at 2580–81). The agent's action served all three goals. In applying pressure to White's car to test her shocks, the agent was determining whether her vehicle was riding low for structural reasons or because its trunk was heavily laden. A policy of referring all low-riding vehicles to secondary inspection would certainly fail to minimize intrusions on legitimate travellers. The agent's purpose was to apprehend aliens, for his action was predicated upon his observation that White, an attractive woman driving alone in a "nice" car which rode low to the ground, fit the profile of drivers used to smuggle aliens in automobile trunks. These "particularized reasons" are among those recognized by the Supreme Court as legitimate grounds for suspicion. *See Brignoni-Ponce*, 422 U.S. at 885, 95 S.Ct. at 2582; *United States v. Ortiz*, 422 U.S. 891, 897, 95 S.Ct. 2585, 2589, 45 L.Ed.2d 623 (1975).

The alternatives open to the agent would not have furthered the public interests stressed in *Martinez-Fuerte*. One possibility would have been to refer all low-riding vehicles to secondary inspection. Or the agent could have requested surveillance of White's vehicle, after it left the checkpoint, to ascertain whether the car bounced over bumps. Third, as White would doubtless have preferred, he could have allowed her to pass through the checkpoint without further inspection. Referring all low-riding vehicles to secondary inspection would increase the burden on the legitimately travelling public, *see Martinez-Fuerte*, 428 U.S. at 560, 96 S.Ct. at 3084; requesting surveillance would increase the degree of intrusion on White, for a roving-patrol stop is more intrusive than one at a permanent checkpoint, *Martinez-Fuerte*, 428 U.S. at 558–59, 96 S.Ct. at 3083; and the third alternative would allow more undocumented aliens to pass freely into the United States. Thus, we conclude the agent's action was reasonable under the circumstances.

CONCLUSION

The balancing analysis appropriate for an automobile stop at a permanent border checkpoint demonstrates that the intrusion upon White was minimal, and that the public interests served by the action are significant. Given the agent's articulated reasons for the suspicion which caused him to press down upon White's car, we hold that this intrusion did not violate White's rights under the fourth amendment.

AFFIRMED.