UNITED STATES of America,
Plaintiff-Appellant,

v.

David Lee GRANDSTAFF, Douglas
Wayne Brown,
Defendants-Appellees.

No. 86–1058.

United States Court of Appeals,
Ninth Circuit.

Argued and Submitted Nov. 12, 1986.

Decided Jan. 8, 1987.

Amended April 1, 1987.

U.S. Atty's Office, Stephen M. McNamee, Philip G. Espinosa, and Daniel G. Knauss, Asst. U.S. Attys., Tucson, Ariz., for plaintiff-appellant.

Robert J. Hirsh, Steven Sherick, and S. Jeffrey Minker, Tucson, Ariz., for defendants-appellees.

Before WRIGHT, SNEED and KOZINSKI, Circuit Judges.

## AMENDED OPINION

PER CURIAM:

This case, raising a constellation of criminal procedure issues, illustrates that law school exams may not be as fanciful as they are reputed to be. Appellees Grandstaff and Brown were under suspicion for the armed robbery of $3,318,000 from the Tucson office of the First National Bank of Arizona in April 1981. Both were fugitives, having jumped bail on interstate transportation of stolen property charges pending in the District of Iowa. Arrest warrants were outstanding for both men.

On September 9, 1981, the FBI received a tip from an informant that Grandstaff and possibly Brown were in Denver. The informant said that Grandstaff was staying at the Sheraton Denver Airport Hotel and was driving a 1979 blue Chevrolet Monte Carlo. FBI agents went to the hotel where they found a blue Monte Carlo in the parking lot. From conversations with the hotel management, the FBI agents determined that Grandstaff was staying in room 223 under an assumed name. Grandstaff was observed checking out and was arrested as he attempted to return to room 223.

FBI agents searched Grandstaff and found a wallet containing false identification. At about the same time, another FBI agent obtained a key to room 223 and entered without knocking or announcing his presence. Inside, he found luggage which he did not open. He also found Brown in the bathroom and arrested him pursuant to the Iowa warrant. A search of Brown incident to the arrest turned up $4891 in cash and the keys to a Ford. Agents took the keys to the hotel parking lot and tried them on all Fords there. They turned out to fit a 1979 Ford Bronco. The agents did not open the Bronco's door or search its interior.

The next day, FBI agents obtained a search warrant from a Denver magistrate. The warrant authorized the search of the luggage in room 223, the Bronco and the Monte Carlo. The luggage was found to contain $51,770 in currency. The search of the Bronco and a suitcase in it yielded $129,990 more.

Grandstaff and Brown filed motions to suppress the evidence found in room 223, the Monte Carlo and the Bronco. Additionally, Brown sought suppression of evidence found on him after his arrest. The district court granted the motion to suppress the evidence found in room 223, in the Bronco and on Brown, and later denied the government's reconsideration motion. This appeal followed.

The government contends that district court erred in suppressing the room 223 evidence because it was seized pursuant to a warrant that can be sustained even without the information obtained during the earlier warrantless entry. It also argues

that, in any event, Brown had no legitimate expectation of privacy in Grandstaff's hotel room, and therefore has no standing to challenge the legality of the agent's entry and the seizures flowing therefrom. We examine the district court's suppression order separately as to Grandstaff and Brown.

## I.

## GRANDSTAFF

### A. *The Standard of Review*

■ Grandstaff argues that we should defer to the district court's determination, much as we defer to the decision of the magistrate in the normal case where the affidavit is unredacted. *Illinois v. Gates,* 462 U.S. 213, 236, 103 S.Ct. 2317, 2331, 76 L.Ed.2d 527 (1983); *United States v. Angulo-Lopez,* 791 F.2d 1394, 1396 (9th Cir. 1986); *United States v. Seybold,* 726 F.2d 502, 503 (9th Cir.1984) (resolving confusion about the standard of review in favor of deference to the magistrate on the basis of *Gates* ). The fallacy in this argument is that the district court did not confront directly, as did the magistrate, the question whether to issue the warrant. Nor would deferring to the district court promote the policy of encouraging police officers to apply for warrants. In brief, the district court does not stand in the shoes of the magistrate. Deferring to the district court in this case would serve no useful purpose.

It will not promote accuracy. We are in as good a position as was the district court to assess the legal sufficiency of the redacted affidavit. *See United States v. Anderson,* 453 F.2d 174, 175 (9th Cir.1971) ("all data necessary to show probable cause for the issuance of a search warrant must be contained within the four corners of a written affidavit given under oath"); *United States v. Rubio,* 727 F.2d 786, 795 (9th Cir.1983) (following *Anderson* ). This assessment involves an application of the probable cause standard that is governed by *McConney. See United States v. McConney,* 728 F.2d 1195, 1203 (9th Cir.) (en banc), *cert. denied,* 469 U.S. 824, 105 S.Ct. 101, 83 L.Ed.2d 46 (1984). Hence de novo review of the district court's decision is appropriate.

### B. *The Merits*

■ To decide whether the magistrate had a substantial basis for issuing the search warrant, we must ascertain what information properly was before him. On this appeal, the government does not deny that the FBI agent who entered room 223 immediately after Grandstaff's arrest acted unlawfully. Brief of Appellant at 8 n. 2. Any information obtained by that entry could not be used by the magistrate as a basis for issuing the search warrant. *See Segura v. United States,* 468 U.S. 796, 813–15, 104 S.Ct. 3380, 3389–90, 82 L.Ed.2d 599 (1984). Because the affidavit presented to the magistrate contained such information the question becomes whether the affidavit, purged of the illegally obtained information, still affords the magistrate a substantial basis for concluding that a search would uncover evidence of wrongdoing. If it does, we should reverse the district court. We conclude that we should do just that.

Our reasoning proceeds as follows. The district court, in granting Grandstaff's motion to suppress, struck from the affidavit information that it believed was tainted by the illegal entry. Excerpt of Record (E.R.) at 162–64 (Order of Oct. 11, 1985, exhibit A). In response to the government's motion for reconsideration, the district court later restored some of the information that it had struck. E.R. at 204 (Order of Jan. 23, 1986, at 6). As a result, the affidavit as redacted by the district court differed from the affidavit as originally presented to the magistrate in only two respects. It omitted all mention of Brown, his arrest, and the money found on his person. And it omitted all mention of the FBI agent's entry into room 223 immediately after Grandstaff's arrest. These two items comprised about 60 words in the original affidavit, the total length of which was about 880 words. Hence they amounted to about seven percent of the affidavit.

Clearly a substantial portion of the affidavit survived the district court's redaction. It still described the Tucson robbery, the trail of evidence implicating Grandstaff, how one suspect in the robbery, possessing

$950,000, had been arrested and had pleaded guilty, and Grandstaff's statement before a magistrate that he had no checking or savings accounts. The affidavit also recited facts linking Grandstaff to room 223 and raising a reasonable inference that evidence of crime could be found therein. As redacted, the affidavit states that Grandstaff had checked out but thereafter was arrested within 100 feet of room 223. From this, it is reasonable to infer that Grandstaff was returning to his room for his luggage and, as we discuss below, that the luggage might well contain the stolen money. *See* pp. 1356–57 *infra.* Thus, the affidavit, so redacted, afforded the magistrate a substantial basis for finding that there was probable cause to issue a search warrant.[1] The district court should have reached this conclusion even if de novo review of the redacted affidavit were appropriate.

The district court obviously was troubled by the relationship between probable cause to arrest and probable cause to search. It acknowledged that the redacted affidavit established probable cause that Grandstaff was guilty. E.R. at 161 (Order of Oct. 11, 1985, at 11). This relationship has troubled this court also. On the one hand, "it cannot follow in all cases, simply from the existence of probable cause to believe a suspect guilty, that there is also probable cause to search his residence. If that were so, there would be no reason to distinguish search warrants from arrest warrants...." *United States v. Lucarz,* 430 F.2d 1051, 1055 (9th Cir.1970). On the other hand, "[t]he required nexus between the items to be seized and the place to be searched rests not only on direct observation, but on the type of crime, the nature of missing items, the extent of the suspects' opportunity for concealment, and normal inferences as to where a criminal would be likely to hide stolen property."

*United States v. Gann,* 732 F.2d 714, 722 (9th Cir.), *cert. denied,* 469 U.S. 1034, 105 S.Ct. 505, 83 L.Ed.2d 397 (1984). In this case, in which a federal fugitive was suspected of having stolen $3.3 million in cash, less than a third of which had been recovered, it was proper to infer that he might have some part of it with him in a hotel room five months after the robbery.

The facts in this case closely resemble those in *United States v. Jackson,* 756 F.2d 703 (9th Cir.1985). There we upheld a search warrant for defendant's apartment based on an affidavit linking him to a bank robbery that took place two months earlier. *Id.* at 705. The district court distinguished *Jackson* on three grounds. Each is inadequate to accomplish its task.

First, the district court pointed out that the search warrant in *Jackson* was for defendant's residence in the same city where the robbery took place, E.R. at 208 (Order of Jan. 23, 1986, at 10), rather than for a hotel room in a different city. But Grandstaff was a fugitive who had jumped bail in Iowa. Even if he had an established residence, it would be imprudent for him to hide stolen property there, because it was probably under surveillance. Robbers like Jackson are likely to keep stolen property near them, whether that be in a residence or not. A fugitive, such as Grandstaff, is even more likely to have at least some of his stolen property near him in his temporary abode.[2] *Cf. Gann,* 732 F.2d at 722 (warrant issued three weeks after robbery

---

1. At one point, the district court reviewed the affidavit and said that it "screams probable cause." 4 Reporter's Transcript (R.T.) at 22. The court made this statement when Grandstaff endeavored to show that factual statements in the affidavit were reckless or false under *Franks v. Delaware,* 438 U.S. 154, 98 S.Ct. 2674, 57 L.Ed.2d 667 (1978). We are puzzled as to why the court's observation did not control its disposition of Grandstaff's suppression motion. The district court also took notice of the fact that $3 million is "not easy to get rid of," 4 R.T. at 23—a

fact that supports the search warrant in this case.

2. We reject the district court's suggestion that, once Grandstaff had checked out of room 223, any probable cause to search there for stolen property evaporated. E.R. at 204 (Order of Jan. 23, 1986, at 6). Apart from the fact that it is not clear whether Grandstaff checked out before his arrest, 3 R.T. at 100–27, the fact that he had no luggage with him permitted an inference that his belongings, and perhaps stolen property, remained in room 223.

authorized search of car—a sort of temporary abode—as well as of residence).

Second, the district court observed that a cofelon, who pleaded guilty, implicated Jackson in the robbery, whereas this affidavit does not state that the cofelon who pleaded guilty implicated Grandstaff in the robbery. E.R. at 208–09 (Order of Jan. 23, 1986, at 10–11). This distinction is meaningless. The district court acknowledged that the affidavit established probable cause that Grandstaff was guilty. E.R. at 161 (Order of Oct. 11, 1985, at 11).

Third, the district court relied on the fact that five months elapsed between the bank robbery and the search in this case, whereas only two months elapsed in *Jackson*. E.R. at 209–10 (Order of Jan. 23, 1986, at 11–12). While the likelihood that a suspect no longer possesses stolen property undoubtedly increases as time goes by, we are not persuaded that five months is sufficient to negate probable cause in this case. The delay before the search of room 223 is offset by the fact that here a greater amount of money was unaccounted for than in *Jackson*, about $2.3 million, as contrasted with about $226,000.

Therefore we conclude that the affidavit contained enough information untainted by the illegal entry to give the magistrate a substantial basis for issuing the warrant to search room 223.

## II.

## BROWN

In order to challenge on fourth amendment grounds the government's use of the information and evidence it found as a result of the FBI agent's entry of room 223,

Brown must demonstrate "a legitimate expectation of privacy in the area searched." *United States v. Salvucci*, 448 U.S. 83, 95, 100 S.Ct. 2547, 2554, 65 L.Ed.2d 619 (1980); *Rakas v. Illinois*, 439 U.S. 128, 148–49, 99 S.Ct. 421, 432–33, 58 L.Ed.2d 387 (1978); *United States v. Pollock*, 726 F.2d 1456, 1465 (9th Cir.1984). This Brown has not done.[3]

■ Room 223 was registered to Grandstaff. The parties have stipulated that Brown was Grandstaff's guest. Although a guest who stays overnight and keeps personal belongings in the residence of another might have a reasonable expectation of privacy, *see United States v. Echegoyen*, 799 F.2d 1271, 1277 (9th Cir. 1986); *United States v. Salvador*, 740 F.2d 752, 755 n. 2 (9th Cir.1984), *cert. denied*, 469 U.S. 1196, 105 S.Ct. 978, 83 L.Ed.2d 980 (1985); *United States v. Robertson*, 606 F.2d 853, 858 n. 2 (9th Cir.1979), mere presence in the hotel room of another is not enough. *Echegoyen*, 799 F.2d at 1277; *United States v. Irizarry*, 673 F.2d 554, 556 (1st Cir.1982). Brown has not shown that he shared Grandstaff's room, stayed there overnight or even that he had his luggage there. In short, he has presented no factual basis for the inference that he had a legitimate expectation of privacy in room 223. Therefore, he has no standing to challenge the agent's entry into the room.

■ The evidence seized from the Brown's person—including the cash and the keys to the Bronco—is not suppressible in any event. Brown's arrest was lawful, having been made pursuant to a valid arrest warrant. Therefore, the search incident to Brown's arrest was lawful.[4]

---

**3.** Brown argues in his petition for rehearing that the government stipulated for purposes of the suppression motion that Brown had a legitimate expectation of privacy in Grandstaff's room. Without addressing whether parties may stipulate what is essentially a question of standing, we believe the government did not clearly stipulate that Brown had a legitimate expectation of privacy. Moreover, Brown raises the issue of an alleged stipulation for the first time in his petition for rehearing. In his brief on appeal, Brown contended only that "there has been no stipulation to the effect that Brown did

*not* have an expectation of privacy in the room. . . ." Brief of Appellee Brown at 10 (emphasis added). Brown also argued that he had a reasonable expectation of privacy, an argument inconsistent with his current position that the matter was stipulated.

**4.** Relying on *United States v. Underwood*, 717 F.2d 482 (9th Cir.1982), *cert. denied*, 465 U.S. 1036, 104 S.Ct. 1309, 79 L.Ed.2d 707 (1984), the district court held that Brown's arrest was unlawful. The court erred. *Underwood* concerned evidence seized during a plain view

Brown raises separate challenges to the evidence found in the Bronco. First, he argues that the insertion of the key into the door lock constituted an unlawful search. Second, he contends that the search of closed luggage in the Bronco required a separate warrant. We reject both contentions.

For the purpose of argument we assume, without deciding, that the insertion of the key into the Bronco was a search for purposes of the fourth amendment.[5] The search was, however, entirely reasonable and therefore comported with the fourth amendment.

■ The "automobile exception" allows for warrantless searches of automobiles if the search was reasonable in scope and supported by probable cause. *California v. Carney*, 471 U.S. 386, 394–95, 105 S.Ct. 2066, 2070–71, 85 L.Ed.2d 406 (1985); *United States v. Bagley*, 772 F.2d 482, 491 (9th Cir.1985), *cert. denied*, —— U.S. ——, 106 S.Ct. 1215, 89 L.Ed.2d 326 (1986).

■ Here, the facts clearly establish probable cause that incriminating evidence would be found in the automobile. The FBI agents knew that Brown was a federal fugitive and bank robbery suspect. Sec-

ond, a large amount of cash was found on Brown's person. Third, a valid search of him yielded keys to an automobile, and few of his belongings were in the hotel room, indicating that they might be in a nearby vehicle.

Moreover, the scope of the search was entirely reasonable. The intrusion upon Brown's privacy was minimal. By inserting the key into the car door, the FBI agents sought to learn only one thing: which car belonged to Brown.[6] The agents did not open the door of the Bronco or search its interior.

■ Brown's alternative argument that the search of the luggage found in the Bronco was unauthorized by the warrant to search the Bronco is without merit. "It is axiomatic that if a warrant sufficiently describes the premises to be searched, this will justify a search of the personal effects therein ... if those effects might contain the items described in the warrant. *United States v. Gomez-Soto*, 723 F.2d 649, 654 (9th Cir.), *cert. denied*, 466 U.S. 977, 104 S.Ct. 2360, 80 L.Ed.2d 831 (1984). Because the warrant authorized the search of the Bronco, the agents could lawfully search

search of a third party's residence after entry based on an arrest warrant; it did not address the validity of the arrest under the warrant. The warrantless entry of room 223 does not affect the validity of Brown's arrest, which was based on an arrest warrant supported by independent probable cause.

Nor is this a case where the arrest was illegal because it was based on fruits of an illegal search. *See* W. LaFave, *Search & Seizure*, § 11.4(e), at 646 (1978). Here, the probable cause supporting the warrant for Brown's arrest was wholly unrelated to, and existed independent of, the entry into Grandstaff's room.

5. *United States v. Portillo-Reyes*, 529 F.2d 844 (9th Cir.1975), *cert. denied*, 429 U.S. 899, 97 S.Ct. 267, 50 L.Ed.2d 185 (1976), suggests that the insertion of a key into a car door can be the beginning of a search. *Portillo-Reyes*, however, has been undermined by intervening decisions of the Supreme Court and this court. *See United States v. Jacobsen*, 466 U.S. 109, 120, 104 S.Ct. 1652, 1660, 80 L.Ed.2d 85 (1983) (removal of plastic bags containing white powder from tube for visual inspection to determine whether substance is cocaine not a search); *United States v. Place*, 462 U.S. 696, 706–07, 103 S.Ct. 2637, 2644, 77 L.Ed.2d 110 (1983) (dog sniffing luggage at airport to detect marijuana not a search); *cf.*

*United States v. White*, 766 F.2d 1328, 1330–32 (9th Cir.1985) (pressing down on trunk at border checkpoint to see if car contains illegal aliens was minimally intrusive). *See also United States v. DeBardeleben*, 740 F.2d 440, 444 (6th Cir.) ("[t]o the extend that the [*Portillo-Reyes*] majority found that defendant had a reasonable expectation of privacy in the identity of his vehicle, we disagree"), *cert. denied* 469 U.S. 1028, 105 S.Ct. 448, 83 L.Ed.2d 373 (1984), cited with approval in *White*, 766 F.2d at 1331. As *White* noted, "[w]hen our court has considered an officer's physical intrusion upon a vehicle ... even for the limited purpose of its identification, we have been unable to define a bright line between 'no search' and 'search but not unreasonable.' " *Id.* As in *White*, we find that the distinction is not crucial. *Id.* at 1332.

6. There is little, if any, reasonable expectation of privacy in the identity of one's vehicle. *See DeBardeleben*, 740 F.2d at 445. One can be freely observed while in the vehicle, or while entering or leaving it. Moreover, motor vehicles must display license plates, which law enforcement officials can use to determine registered ownership.

any luggage found therein that might contain the contraband listed in the warrant. *United States v. Chadwick,* 433 U.S. 1, 97 S.Ct. 2476, 53 L.Ed.2d 538 (1977), is inapposite. That case involved the search of a locked footlocker in the trunk of a car when the search of the car itself was without a warrant.

### III.

### CONCLUSION

We reverse the district court's suppression order as to both Grandstaff and Brown.