**UNPUBLISHED**

**UNITED STATES COURT OF APPEALS**

**FOR THE FOURTH CIRCUIT**

UNITED STATES OF AMERICA,
Plaintiff-Appellee,

v.                                                          No. 96-4673

DOMINIC MASI,
Defendant-Appellant.

Appeal from the United States District Court
for the District of South Carolina, at Anderson.
G. Ross Anderson, Jr., District Judge.
(CR-95-492)

Argued: December 5, 1997

Decided: February 24, 1998

Before WILLIAMS, Circuit Judge, WILSON, Chief United States
District Judge for the Western District of Virginia, sitting by
designation, and MORGAN, United States District Judge for the
Eastern District of Virginia, sitting by designation.

_____

Affirmed by unpublished per curiam opinion.

_____

**COUNSEL**

**ARGUED:** Robert Isaac Kalina, New York, New York, for Appel-
lant. Arthur Bradley Parham, OFFICE OF THE UNITED STATES
ATTORNEY, Greenville, South Carolina, for Appellee. **ON BRIEF:**
J. Rene Josey, United States Attorney, E. Jean Howard, Assistant
United States Attorney, Greenville, South Carolina, for Appellee.

_____

Unpublished opinions are not binding precedent in this circuit. See Local Rule 36(c).

_____

**OPINION**

PER CURIAM:

On April 9, 1996, a jury found Dominic Masi guilty of conspiracy to possess with intent to distribute marijuana in violation of 21 U.S.C.A. §§ 841(a)(1) and 846 (West 1981 & Supp. 1997). On August 27, 1996, the district court sentenced Masi to 63 months imprisonment, ordered three years of supervised release, and imposed a $10,000 fine and a $50 special assessment. Masi appeals both his conviction and sentence. He argues that the district court erroneously admitted evidence obtained in violation of his Fourth Amendment rights, erroneously removed the issue of the existence of a conspiracy from the jury's consideration, erroneously denied his Motion for Judgment of Acquittal based upon the insufficiency of the Government's evidence, and failed properly to instruct the jury regarding witness credibility. As to his sentence, Masi contends that the district court erroneously computed his base offense level and failed to grant him a two-level reduction for acceptance of responsibility. For the reasons stated below, we affirm Masi's conviction and sentence.

I.

Taken in the light most favorable to the Government, see United States v. Burgos, 94 F.3d 849, 854 (4th Cir. 1996) (en banc), cert. denied, 117 S. Ct. 1087 (1997), the evidence at Masi's trial established the following facts. For several months prior to June 2, 1995, Michael Luca and Steven Ostuni negotiated with Jerry Nixon and Rickey Pruitt for the purchase of a large quantity of marijuana. Unbeknownst to Luca and Ostuni, Pruitt was a South Carolina Law Enforcement Division (SLED) agent and Nixon was his confidential informant, and the marijuana transaction was part of a "reverse sting" operation conducted by SLED. During the course of these negotiations, Luca contacted Masi, a twenty-year associate, about funding the transaction. Masi agreed and subsequently traveled to South Carolina

2

from New Jersey on June 2, 1995, to participate in the transaction. That same day Ostuni and Luca traveled from Atlanta, Georgia, to Anderson, South Carolina, to meet with Nixon and Pruitt to purchase approximately two hundred pounds of marijuana.

To facilitate the transaction, Luca rented room 113 at the Howard Johnson Motel in Anderson. When Luca and Ostuni arrived at the motel, Luca paged Nixon to let him know where the transaction would be conducted. Ostuni then paged Masi, who was en route from New Jersey, to notify him of the meeting place. By mid-afternoon, Luca, Ostuni, Nixon, Pruitt, and Masi were all present in room 113. Before the transaction could begin, Nixon said he needed to see some money. Masi then went to his car and returned with a box and a bag, each containing approximately $50,000 in cash. Fifty thousand dollars represented payment to Ostuni for marijuana that Ostuni had "fronted" Masi in a prior transaction, while the other $47,000 was shown to Nixon as "good faith" money towards the instant transaction. Neither Luca nor Ostuni brought any money to the transaction.[1]

Luca, Ostuni, Nixon, and Pruitt then departed the motel to go to a nearby warehouse where the marijuana was stored. Luca gave Masi permission to remain in the motel room while they went to see the marijuana. At the warehouse, Nixon and Pruitt showed Luca and Ostuni burlap sacks containing approximately 200 pounds of marijuana. As Ostuni opened the bag and placed his hand inside, Pruitt arrested both Luca and Ostuni. Shortly thereafter, Luca gave his consent to search the motel room. Pruitt then radioed this information to the SLED agents located at the motel. Led by SLED Agent Harrison, the agents entered room 113 and seized currency totaling $109,185. During the search Masi denied any knowledge of who had rented the room or owned the money. The currency, along with the statements made by Masi, were admitted as evidence against Masi in his trial.

Masi, Luca, and Ostuni were indicted by a grand jury on June 27, 1995, for (1) conspiracy to possess with intent to distribute marijuana, see 21 U.S.C.A. §§ 841(a)(1) and 846 (West 1981 & Supp.

---

[1] The evidence revealed that Luca had $70 and that Ostuni had approximately $3000 of pocket money. All agreed, however, that Masi was responsible for bringing the money for the marijuana purchase.

3

1997), and (2) possession with intent to distribute marijuana, see 21 U.S.C.A. § 841(a)(1) (West 1981). The Government also sought forfeiture of approximately $109,185.00 in United States currency. See 21 U.S.C.A. § 853(a) (West Supp. 1997). Prior to trial, the Government dismissed the criminal forfeiture charges against all three defendants. Luca and Ostuni pleaded guilty to the conspiracy charge and subsequently testified for the Government in Masi's trial.

After a two-day trial, a federal jury found Masi guilty of conspiracy on April 9, 1996. The district court, with the Government's consent, dismissed the possession-with-intent-to-distribute charge. At sentencing, the district court attributed 95 kilograms (approximately 200 pounds) of marijuana to Masi, resulting in a base offense level of 24. See U.S. Sentencing Guidelines Manual § 2D1.1(c)(8) (1995). The district court ruled that Masi was not eligible for an adjustment for acceptance of responsibility. The court sentenced him to 63 months imprisonment to be followed by 3 years supervised release, and imposed a $10,000 fine and a $50 special assessment. Masi appeals.

II.

Masi appeals his conviction on numerous grounds. First, Masi contends that his conviction must be reversed because the district court erroneously denied his motion to suppress evidence obtained as the direct result of the police officers' illegal search of the motel room in which he was arrested. Next, Masi argues that the district court erroneously removed one of the elements of the crime from the jury's consideration when the court effectively stated during the trial that it believed that a conspiracy existed. Masi also asserts that the district court failed adequately to instruct the jury regarding the testimony of law enforcement officers. Finally, Masi challenges the sufficiency of the evidence supporting his conviction. We address each argument in turn.

A.

Masi contends that the district court erroneously denied his motion to suppress currency seized and statements made by himself as a direct result of the warrantless search of room 113 of the Howard Johnson Motel.

4

To assert a Fourth Amendment challenge to the Government's use of evidence obtained during the search of the motel room, Masi must establish that he had "a legitimate expectation of privacy" in the motel room.**2** See Rakas v. Illinois , 439 U.S. 128, 148-49 (1978); United States v. Al-Talib, 55 F.3d 923, 930 (4th Cir. 1995) ("It is well-established that a criminal defendant does not have standing to contest the search of a third party unless he can show he had a reasonable expectation of privacy in the area searched or the property seized."). "A subjective expectation of privacy is legitimate if it is one that society is prepared to recognize as reasonable." Minnesota v. Olson, 495 U.S. 91, 95-96 (1990) (internal quotation marks omitted) (citing Rakas v. Illinois, 439 U.S. at 143-44, n.12 (quoting Katz v. United States, 389 U.S. 347, 361 (1967) (Harlan, J., concurring))). The defendant has the burden of showing that he has a reasonable expectation of privacy in the area searched. See Rawlings v. Kentucky, 448 U.S. 98, 104 (1980).

Relying upon the Supreme Court's holding in Minnesota v. Olson, Masi contends that he had a legitimate expectation of privacy in the motel room. In Olson, the Supreme Court held that an overnight guest in another's home has a legitimate expectation of privacy in the dwelling. 495 U.S. at 100. As the Supreme Court reasoned in Olson, our society acknowledges that an individual often stays and sleeps in the homes of others when traveling "precisely because it provides him with privacy, a place where he and his possessions will not be disturbed by anyone but his host and those his host allows inside." Id. at 99. The Court recognized that "[w]e are at our most vulnerable when we are asleep because we cannot monitor our own safety or the security of our belongings." Id.

The circumstances of Masi's presence in room 113 of the Howard

_____

**2** While commonly referred to as"standing," the Supreme Court has explained that the issue of standing in a Fourth Amendment claim collapses into the merits of the claim. See Rakas v. Illinois, 439 U.S. 128, 139 (1978). In Rakas, the Court "abandoned a separate inquiry into a defendant's `standing' to contest an allegedly illegal search in favor of an inquiry that focused directly on the substance of the defendant's claim that he or she possessed a `legitimate expectation of privacy' in the area searched." Rawlings v. Kentucky, 448 U.S. 98, 104 (1980).

5

Johnson Motel are vastly different from those of the defendant in Olson. Masi was not an overnight guest in the motel room. Compare Stone v. California, 376 U.S. 483, 490 (1964) (holding that an overnight guest "living" in a hotel room, like "a tenant of a house, or the occupant of a room in a boarding house," has a legitimate expectation of privacy in the hotel room) (citations omitted). He did not have any luggage, and he did not stay or plan to stay overnight. Masi did not pay any portion of the room rental bill. Cf. United States v. Kitchens, 114 F.3d 29, 32 (4th Cir. 1997) (defendants had no legitimate expectation of privacy in rented hotel room after "check-out time" when no further rental payment had been made). In fact, Masi had to request permission to remain in the room. Masi's sole purpose for being in the motel room was to conduct an illegal marijuana transaction and to that end, he was simply waiting momentarily in the room for his co-conspirators to return. While Masi may have had a subjective expectation of privacy in the room, it was not a reasonable expectation of privacy "rooted in `understandings that are recognized and permitted by society.'" Olson, 495 U.S. at 100 (quoting Rakas v. Illinois, 439 U.S. at 144, n.12 (1978)); see also id. at 99 (determining that an "overnight guest" has a legitimate expectation of privacy, in part, because he is engaging in a "longstanding social custom that serves functions recognized as valuable by society"); cf. Bonner v. Anderson, 81 F.3d 472, 475 (4th Cir. 1996) (concluding that a "frequent visitor" of neighbor's residence for purpose of visiting and assisting her elderly neighbor established an expectation of privacy in the residence that is "recognized and permitted by society"). Accordingly, we conclude that Masi, a mere casual visitor whose presence was for the sole purpose of conducting an illegal transaction, cannot invoke the protections of the Fourth Amendment. See United States v. Maddox, 944 F.2d 1223, 1234 (6th Cir. 1991) (holding that a "purely transient party guest" had no reasonable expectation of privacy in his host's home); United States v. Grandstaff, 813 F.2d 1353, 1357 (9th Cir. 1987) (holding that "mere presence in the hotel room of another is not enough" to establish a legitimate expectation of privacy in one's surroundings).**3**

_____

**3** Even if Masi had a legitimate expectation of privacy in the motel room, the district court found that the SLED Agents did not enter the room until after Luca had consented to the search. Because that finding is not clearly erroneous, we hold that Luca's consent validated the

6

B.

Masi argues that his conviction should be reversed because the district court impermissibly invaded the jury's province by stating the existence of a conspiracy -- the first element of the crime charged.**4**

To determine whether the district court's comment constituted error, we must consider the remark in the context in which it was made. During the direct examination of Luca, the Government asked Luca how much money Masi brought to the motel room. The following exchange ensued:

Luca: I was told there was $50,000 -- -- --

Defense counsel: Objection, Your Honor. May we know who told him and when?

The Court: This is conspiracy. Did somebody in the conspiracy tell you how much money was there?

Luca: I just overheard the conversation.

The Court: All right, go right ahead.

_____

search. See Minnesota v. Olson, 495 U.S. 91, 99 (1990) (holding that an overnight guest may not complain when his privacy is disturbed by "his host and those his host allows inside" the home); see also Schneckloth v. Bustamonte, 412 U.S. 218, 219 (1973) (a search conducted pursuant to valid consent is an exception to the Fourth Amendment's warrant and probable cause requirements). Accordingly, we affirm the district court's subsequent holding that the search was proper and that all evidence obtained as a result was admissible.

**4** To prove conspiracy to possess marijuana with intent to distribute, the Government must establish that: (1) an agreement to possess marijuana with intent to distribute existed between two or more persons; (2) the defendant knew of the conspiracy; and (3) the defendant knowingly and voluntarily became a part of this conspiracy. See United States v. Burgos, 94 F.3d 849, 857 (4th Cir. 1996) (en banc), cert. denied, 117 S. Ct. 1087 (1997).

7

Luca: That there was $50,000 in one pile, and approximately
        $50,000 -- $49,000 or $50,000 in the other.

(J.A. at 170-71.) No further objection was made, either to Luca's
response or the district court's statement and ruling.

On appeal, however, Masi contends that the district court's state-
ments indicated a personal belief that a conspiracy existed between
the parties, thereby effectively relieving the Government of its burden
of proof of the first element of the crime charged. See United States
v. Gaudin, 115 S. Ct. 2310, 2320 (1995) ("The Constitution gives a
criminal defendant the right to have a jury determine, beyond a rea-
sonable doubt, his guilt of every element of the crime with which he
is charged."). We review Masi's claim for plain error. See United
States v. Cedelle, 89 F.3d 181, 184 (4th Cir. 1996) ("When a criminal
appellant asserts an error that occurred during proceedings before the
district court, but that was forfeited through a failure to timely object,
we may notice such error only if it is a `[p]lain error[ ] or defect[ ]
affecting substantial rights.'" (quoting Fed. R. Crim. P. 52(b)) (alter-
ations in original)). To establish plain error, Masi must demonstrate
that (1) the asserted defect in the trial was, in fact, error; (2) the error
was plain; and (3) the error affected his substantial rights. See Fed.
R. Crim. P. 52(b); see also United States v. Olano, 507 U.S. 725, 732
(1993). "If all three conditions are met, an appellate court may then
exercise its discretion to notice a forfeited error, but only if (4) the
error seriously affect[s] the fairness, integrity, or public reputation of
judicial proceedings." Johnson v. United States, 117 S. Ct. 1544, 1549
(1997) (internal quotation marks omitted) (alteration in original).

The district court's statements did not constitute error because,
contrary to Masi's assertions, the district court did not offer erroneous
or prejudicial comments on the evidence or improperly instruct the
jury. Defense counsel asked the district court to determine whether
the hearsay evidence was admissible. Under the Federal Rules of Evi-
dence, "[a] statement is not hearsay if . . .[t]he statement is offered
against a party and is . . . a statement by a coconspirator of a party
during the course and in furtherance of the conspiracy." Fed. R. Evid.
801(d)(2)(E). Before admitting evidence under Rule 801, a district
court must decide whether the Government has proven by a prepon-
derance of the evidence (1) that there was a conspiracy involving the

8

declarant and the party against whom admission of the evidence is sought and (2) that the statement at issue was made during the course and in furtherance of that conspiracy. See Bourjaily v. United States, 483 U.S. 171, 175 (1987); United States v. Capers, 61 F.3d 1100, 1105 (4th Cir. 1995).

While it is not imperative for a district court to state on the record its reasons for making its evidentiary ruling, we have held that "it may be advisable for the trial court to do so in order for an appellate court to more easily assess the basis of the ruling." United States v. Blevins, 960 F.2d 1252, 1256 (4th Cir. 1992). This was clearly the context in which the district court's statements were made. The court was merely explaining the court's ruling to counsel, not making a conclusive finding that the Government had proved the existence of a conspiracy beyond a reasonable doubt. Cf. United States v. David, 83 F.3d 638, 648 (4th Cir. 1996) (noticing the district court's plain error in failing to instruct on an essential element of the crime because a jury conceivably could have determined that the Government had not proven that element).

While challenging the propriety of the district court's remark, Masi completely ignores that his own attorney also acknowledged the existence of a conspiracy in the identical context later in the trial. During the direct examination of SLED Agent Pruitt, the Government asked Pruitt to recount a statement made by Ostuni after his arrest. Defense counsel for Masi objected, stating that the statement was made "after the conspiracy ended." (J.A. at 268.)

Finally, we note that in its subsequent charge to the jury, the district court properly instructed the jury as to the elements of the crime charged and the Government's burden of proof. The court further instructed the jurors to disregard any comments made by the court during the trial and not to assume that the court's comments indicated that it had any opinion concerning the issues in the case. Accordingly, we decline to hold that the district court's statement, when considered in context, was error. Cf. United States v. Gravely, 840 F.2d 1156, 1164-65 (4th Cir. 1988) (finding that defendant was not denied a fair trial when district court commented during its instructions, among other things, that there was not much doubt that a conspiracy existed

9

when court prefaced comments with a statement that they were not binding upon the jury and that they could disregard them).

C.

Masi next argues that the district court abused its discretion when it refused to instruct the jury that the testimony of law enforcement officers is not entitled to greater weight than that of other witnesses.[5]

A district court's denial of a requested jury instruction "'constitutes reversible error only if the instruction: (1) was correct; (2) was not substantially covered by the court's charge to the jury; and (3) dealt with some point in the trial so important that failure to give the requested instruction seriously impaired the defendant's ability to conduct his defense.'" United States v. Guay , 108 F.3d 545, 550 (4th Cir. 1997) (quoting United States v. Lewis, 53 F.3d 29, 32 (4th Cir. 1995)). While Masi's requested instruction was a correct statement of the law, it was substantially covered by other instructions the court gave to the jury. Specifically, the district court instructed the jury that it should consider a witness's relationship to the Government or to the defendant, as well as any biases, prejudices, or special interests the witness may have in the outcome of the case, when weighing the witness's testimony. (J.A. at 389.) The district court's decision was not reversible error.

_____

[5] Masi requested the following instruction:

> You have heard the testimony of law enforcement officials. The fact that a witness may be employed by the Federal (or State) Government as a law enforcement official does not mean that his testimony is necessarily deserving of more or less consideration or greater or lesser weight than that of an ordinary witness.

> At the same time, it is quite legitimate for defense counsel to try to attack the credibility of a law enforcement witness on the grounds that his testimony may be colored by a personal or professional interest in the outcome of the case.

> It is your decision, after reviewing all the evidence, whether to accept the testimony of the law enforcement witness and to give to that testimony whatever weight, if any, you find it deserves.

(J.A. at 412A.)

10

D.

Finally, Masi urges us to reverse his conviction based upon the insufficiency of the evidence. When reviewing a sufficiency-of-the-evidence claim, we will sustain the jury's verdict "if there is substantial evidence, taking the view most favorable to the Government, to support it." Glasser v. United States, 315 U.S. 60, 80 (1942). "[S]ubstantial evidence is evidence that a reasonable finder of fact could accept as adequate and sufficient to support a conclusion of a defendant's guilt beyond a reasonable doubt." United States v. Burgos, 94 F.3d 849, 862 (4th Cir. 1996) (en banc), cert. denied, 117 S. Ct. 1087 (1997).

To prove conspiracy to possess marijuana with intent to distribute, the Government must establish (1) an agreement to possess marijuana with intent to distribute existed between two or more persons; (2) the defendant knew of the conspiracy; and (3) the defendant knowingly and voluntarily became a part of this conspiracy. See id. at 857. The "`gravamen of the crime of conspiracy is an agreement to effectuate a criminal act.'" Id. (emphasis in original) (quoting United States v. Laughman, 618 F.2d 1067, 1074 (4th Cir. 1980)). Acknowledging the difficulty of proving the existence of a conspiracy by direct evidence, we have held that "a conspiracy may be proved wholly by circumstantial evidence . . . of a defendant's `relationship with other members of the conspiracy, the length of this association, the defendant's attitude and conduct, and the nature of the conspiracy.'" Id. at 858 (quoting United States v. Collazo, 732 F.2d 1200, 1205 (4th Cir. 1984)) (alterations omitted). Moreover, a defendant's claim that he did not understand the extent of the conspiracy in which he willfully participated does not preclude a finding of guilt. See id. ("Indeed contemporary drug conspiracies can contemplate only a loosely-knit association of members linked only by their mutual interest in sustaining the overall enterprise of catering to the ultimate demands of a particular drug consumption market." (internal omissions, quotation marks, and alterations omitted)). "To sustain a conspiracy conviction, there need only be a showing that the defendant knew of the conspiracy's purpose and some action indicating his participation." United States v. Brooks, 957 F.2d 1138, 1147 (4th Cir. 1992) (citations and alterations omitted).

11

With these principles in mind, we have no trouble concluding that there was sufficient evidence to convict Masi of conspiracy. Ostuni and Luca had been negotiating the purchase of a large amount of marijuana from Nixon and Pruitt for several months, finally settling on a purchase of two hundred pounds. Ostuni and Luca, however, lacked the funds to make the purchase. As a result, Ostuni contacted Masi, "his man up north," (J.A. at 261), in the hopes of enticing him to fund the purchase. Masi, who had an established twenty-year working relationship with Ostuni, agreed to the transaction, and traveled to South Carolina from New Jersey with over $100,000 in cash for the sole purpose of purchasing the bargained-for marijuana. Masi brought the cash into the motel room where he met with Ostuni, Luca, Nixon, and Pruitt. Masi then gave $50,000 cash to Ostuni to show Pruitt as "good faith" money that he was prepared to make the buy. Based on the foregoing evidence, we readily conclude that a jury could reasonably find that Masi was a willing and knowing participant in the conspiracy to purchase over two hundred pounds of marijuana.

III.

Masi also challenges his sentence. Specifically, he argues that the district court erroneously determined his base offense level and failed to grant him an "acceptance of responsibility" reduction.

A.

Masi contends that the district court erred in attributing two hundred pounds of marijuana to him when computing his base offense level.

The Government must establish by a preponderance of the evidence that a particular amount of drugs may be attributed to a particular defendant for sentencing purposes. See United States v. McDonald, 61 F.3d 248, 255 (4th Cir. 1995). The district court's factual findings as to the quantity of drugs attributable to a defendant will be upheld absent clear error. See 18 U.S.C.A. § 3742(e) (West Supp. 1997); United States v. Lamarr, 75 F.3d 964, 972 (4th Cir.), cert. denied, 117 S. Ct. 358 (1996). In drug offenses where the defendant is acting in concert with others, his relevant conduct includes all of his own acts and reasonably foreseeable acts of others which were

12

part of the same course of conduct or common scheme or plan as the offense of conviction. See U.S. Sentencing Guidelines Manual § 1B1.3(a)(1)(B) (1995); United States v. McHan, 101 F.3d 1027, 1043 (4th Cir. 1996), cert. denied, 117 S. Ct. 2468 (1997).

At the sentencing hearing, SLED Agent Pruitt testified that Luca and Ostuni, Masi's co-conspirators, had agreed to purchase in excess of two hundred pounds of marijuana and that Masi's role in the conspiracy was to fund the transaction. Luca and Ostuni arrived at the transaction empty-handed, obviously relying upon Masi to bring the money necessary to purchase the drugs. Masi argues that the district court erred when it attributed the two hundred pounds of marijuana to him because the $47,000 he brought was clearly insufficient to purchase two hundred pounds of marijuana, valued at approximately $180,000. We disagree. First, SLED Agent Pruitt testified that "fronting" marijuana is common practice among drug dealers, as evidenced by Ostuni's earlier dealings with Masi. Ostuni testified that he fully intended to acquire the entire two hundred pounds of marijuana for a $47,000 down payment using this practice. Based upon this history of "fronting" marijuana between Masi and Ostuni, it was reasonably foreseeable to Masi that he could obtain a significant amount of marijuana with the $47,000 he brought to the table. Second, it was also reasonably foreseeable to Masi that Ostuni would apply the $50,000 repayment to the current deal for a total down payment of $97,000. This was easily enough money to obtain two hundred pounds of marijuana. See United States v. McManus, 23 F.3d 878, 885 (4th Cir. 1994) (stating that in a drug conspiracy, the appropriate offense level "is to be determined based upon all acts of the defendant, as well as all reasonably foreseeable acts of others in furtherance of the conspiracy"). In light of the above, it was not clearly erroneous for the district court to attribute the entire two hundred pounds of marijuana to Masi at sentencing.

B.

Masi also argues that the district court erroneously denied him a two-level adjustment for acceptance of responsibility. See U.S. Sentencing Guidelines Manual, § 3E1.1 (1995).

At the sentencing hearing, the district court stated:

13

The court observed Mr. Masi throughout the trial and since the trial. And the court observed no conduct which would qualify him for acceptance of responsibility under the Guidelines. In fact, to the contrary. While he did not testify at trial, I'm not penalizing him for not testifying, nor am I penalizing him for going to trial. I just think from the totality of the circumstances in this case that he did not show any acceptance of responsibility.

(J.A. at 452.) Masi has correctly pointed out that standing trial does not automatically preclude a defendant from consideration for a reduction for acceptance of responsibility. U.S.S.G.§ 3E1.1, comment. (n.2).[6] Such a situation is"rare," however, and § 3E1.1 was "not intended to apply to a defendant who puts the government to its burden of proof at trial by denying the essential factual elements of guilt, is convicted, and only then admits guilt and expresses remorse." Id.

"A sentencing judge is in a unique position to evaluate a defendant's acceptance of responsibility. For this reason, the determination of the sentencing judge is entitled to great deference on review." U.S.S.G. § 3E1.1, comment. (n.5). After reviewing the record and having the benefit of oral argument, we affirm the district court's sentence. In short, Masi never, during his trial, sentencing, or on appeal, admitted that he was part of a conspiracy to distribute marijuana. Accordingly, we have no reason to set aside the district court's finding that Masi has never accepted responsibility for his crimes and therefore we agree that he is not entitled to a U.S.S.G. § 3E1.1 reduction. See United States v. Gordon, 895 F.2d 932, 936 (4th Cir. 1990) ("[A] defendant must first accept responsibility for all of his criminal conduct.").

IV.

In conclusion, we affirm Masi's conviction and sentence for the
_____

[6] The Commission has acknowledged that a defendant may exercise his right to a trial to make a constitutional challenge to a statute, for example, yet still be entitled to an acceptance of responsibility reduction. See U.S. Sentencing Guidelines Manual § 3E1.1, comment. (n.2) (1995).

reasons outlined above.

<u>AFFIRMED</u>

15