UNITED STATES of America,
Plaintiff-Appellee,

v.

Kevin Lamar JACKSON,
Defendant-Appellant.

No. 84–5157.

United States Court of Appeals,
Ninth Circuit.

Submitted Jan. 9, 1985.

Decided March 26, 1985.

Ferguson, Circuit Judge, concurred with opinion.

Nora M. Manella, Los Angeles, Cal., for plaintiff-appellee.

Terry Amdur, Pasadena, Cal., for defendant-appellant.

Before SNEED, POOLE and FERGUSON, Circuit Judges.

POOLE, Circuit Judge:

Kevin Lamar Jackson appeals his conviction by a jury of conspiracy to steal funds from and armed larceny of a Savings and Loan Association, in violation of 18 U.S.C. § 371 and §§ 2113(b) and (d). He was found not guilty of killing to avoid apprehension for larceny under 18 U.S.C. § 2113(e). We affirm.

On Friday, October 28, 1983, the dead body of Tuong Truong was found in an alley near the produce section of Los Angeles. Within four hours of the discovery of the body, the blue van Truong had been driving was identified as the getaway vehicle in a robbery of more than $225,000 from Family Savings and Loan Association. Inside the abandoned van police found: a Halloween mask; a 9mm handgun, later determined to be the property of Gregory Lewis; ammunition; a newspaper with Kevin Jackson's fingerprints upon it; miscellaneous apparel; and a workshirt in which was found a paper containing the name "Shep" and a telephone number.

On December 15, 1983, vault teller Norman Ward admitted that he knew the robbers and had received $1,800 for giving them information about the receipt and storage of funds at Family Savings and Loan. Agents of the Federal Bureau of Investigation subsequently contacted "Shep," Sean Shepard Parrish, who told them that about a week before the robbery, a man known to him as Kevin Augustine and three other men sought from him information about the purchase of automatic weapons and explosives. Parrish identified appellant Jackson as Kevin Augustine. He said Jackson had written two telephone numbers on one of Parrish's business cards. This card was introduced into evidence at trial.

On December 22, 1983 a magistrate issued a warrant authorizing the search of Jackson's apartment. The search revealed a shoe box with $23,640 in currency, an address book containing the names of other participants in the robbery, and a receipt for a cashier's check.

At trial the jury learned that Parrish was paid $500 in exchange for his agreement to contact the F.B.I. if he should see Jackson. Defense counsel unsuccessfully sought to question Parrish concerning assistance he rendered the F.B.I. in an unrelated investigation four months after the Family Savings and Loan investigation. The court would not allow cross-examination along these lines.

On appeal, Jackson asserts error by the district court in denying his motion to suppress, in admitting evidence of the murder of Truong, and in limiting cross-examination of Parrish. We consider each argument and find no error warranting reversal.

*The Motion to Suppress*

Jackson's claim that evidence seized from his apartment should have been suppressed lacks merit. He asserts that the affidavit presented to the magistrate lacked sufficient facts for him to conclude that evidence would be present in Jackson's apartment. We review the magistrate's decision to issue the search warrant only to determine whether there was "substantial basis" for concluding that the evidence sought would probably be found in the place described in the affidavit. *Illinois v. Gates,* 462 U.S. 213, 103 S.Ct. 2317, 2331–32, 76 L.Ed.2d 527 (1983); *United States v. Hendricks,* 743 F.2d 653, 654 (9th Cir.1984).

■ The affidavit of FBI Special Agent O'Quinn demonstrated a fair probability that evidence of a crime would be found in Jackson's apartment. It set forth the facts of the robbery, the discovery of the getaway van, and facts linking the contents of the van with Gregory Lewis. The affidavit also contained details of an interview with Norman Ward, in which he implicated himself in the robbery, as well as Gregory Lewis, other codefendants, and a man known to him as Kevin. Ward identified a photograph of Kevin Jackson as the man whom he knew as Kevin.

■ Direct evidence linking criminal objects to a particular site is not required for the issuance of a search warrant. *United States v. Poland,* 659 F.2d 884, 897 (9th Cir.), *cert. denied,* 454 U.S. 1059, 102 S.Ct. 611, 70 L.Ed.2d 598 (1981). A magistrate need only determine that a fair probability exists of finding evidence, *United States v. Seybold,* 726 F.2d 502, 504 (9th Cir.1984), considering the type of crime, the nature of items sought, the suspect's opportunity for concealment and normal inferences about where a criminal might hide stolen property. *United States v. Pheaster,* 544 F.2d

353, 373 (9th Cir.1976), *cert. denied,* 429 U.S. 1099, 97 S.Ct. 1118, 51 L.Ed.2d 546 (1977).

■ It was a reasonable inference that Jackson might keep stolen currency in his apartment from a bank robbery two months earlier. Of the $228,241.00 stolen from the bank, only $1,800, the payment to Ward, had been accounted for. The money was somewhere. The two month interval between the robbery and the search of Jackson's apartment did not dispel the probability that the currency, or some of it, remained in Jackson's apartment. *See United States v. Gann,* 732 F.2d 714, 722 (9th Cir.), *cert. denied,* —— U.S. ——, 105 S.Ct. 505, 83 L.Ed.2d 397 (1984). We have upheld residential search warrants seeking evidence of crimes committed three and one half months earlier, *United States v. Jacobs,* 715 F.2d 1343, 1346 (9th Cir.1983); *see also, United States v. Collins,* 559 F.2d 561 (9th Cir.), *cert. denied,* 434 U.S. 907, 98 S.Ct. 309, 54 L.Ed.2d 195 (1977) (search warrant issued six weeks after bank robbery). The magistrate's substantial basis for concluding that probable cause existed is apparent. The district court correctly denied Jackson's motion to suppress.

*Admission of Murder Evidence*

While the jury acquitted him of the murder charge in Count II, Jackson claims that testimony about the murder was so inflammatory as to influence the verdicts of guilty on the conspiracy charge and the armed larceny charge. Since the killing of Truong occurred several hours prior to the bank robbery, Jackson maintains that he was improperly charged with murder under 18 U.S.C. § 2113(e). He insists that this section applies only where a killing occurs during or after the commission of a robbery. We disagree.

■ Section 2113(e) provides that
Whoever, in committing any offense defined in this section, or in avoiding or attempting to avoid apprehension for the commission of such offense, or in freeing himself or attempting to free himself

from arrest or confinement for such offense, kills any person, or forces any person to accompany him without the consent of such person, shall be imprisoned not less than ten years, or punished by death if the verdict of the jury shall so direct.

The essential elements of 18 U.S.C. § 2113(e) are the commission of a robbery and a killing or kidnapping in connection with it. *United States v. Jones,* 678 F.2d 102, 105 (9th Cir.1982). Thus, murder or kidnapping committed in avoiding apprehension or to escape confinement after arrest for a robbery need not occur simultaneously with the robbery itself; the test is not the time and place of the murder, but its relation to the robbery. *Clark v. United States,* 184 F.2d 952, 954 (10th Cir.1950), *cert. denied,* 340 U.S. 955, 71 S.Ct. 566, 95 L.Ed. 688 (1951).

Hence, § 2113(e) has been applied in situations where a murder occurs long after the date of the robbery. *United States v. Etheridge,* 424 F.2d 951 (6th Cir.1970), *cert. denied,* 400 U.S. 993, 91 S.Ct. 463, 27 L.Ed.2d 422 (1971) (murder of robbery co-conspirator occurred over six weeks after the most recent robbery and before another planned robbery came to fruition). *See also Gilmore v. United States,* 124 F.2d 537 (10th Cir.), *cert. denied,* 316 U.S. 661, 62 S.Ct. 941, 86 L.Ed. 1738 (1942), (murder of detective during an escape attempt almost one year after the robbery).

■ The murder of Truong falls within the purview of the plain language of § 2113(e). Defendants apparently murdered Truong to obtain his van for use in the bank robbery. In this sense, the murder occurred during the course of "committing [an] offense defined in * * * [§ 2113] * * * or in avoiding or attempting to avoid apprehension." The purpose of using another person's vehicle is to avoid or attempt to avoid apprehension. The murder therefore occurred "in connection with" the robbery, although several hours prior to it.[1] The above cases, moreover, rejected the notion that the murder must occur during the robbery or "in hot pursuit" immediately after it occurs.

■ Charging Jackson with a violation of § 2113(e) was within the purview of Rule 8 of the Federal Rules of Criminal Procedure. While the jury found him not guilty of Truong's murder, it cannot be said that the murder evidence was so insubstantial that it was introduced purely to prejudice the jury against Jackson. Admission of the murder evidence was not error.

*Limitation of Cross-examination*

■ Jackson also complains of the limitation on his questioning of Sean Parrish concerning his paid cooperation with law enforcement agencies after January, 1984. The extent of cross-examination is within the discretion of the trial judge, *Smith v. Illinois,* 390 U.S. 129, 132, 88 S.Ct. 748, 750, 19 L.Ed.2d 956 (1968), and reviewable for abuse of discretion. *United States v. Kenny,* 645 F.2d 1323, 1347–48 (9th Cir.), *cert. denied,* 452 U.S. 920, 101 S.Ct. 3059, 69 L.Ed.2d 425 (1981). Undue restriction upon cross-examination of paid government informants may be reversible error, *e.g., United States v. Uramoto,* 638 F.2d 84 (9th Cir.1980) (reversible error to prevent cross-examination of informant about threats to other individuals, where sole issue was whether defendant acted due to threats, and informant denied threatening defendant). But no violation of the confrontation clause occurs unless the restriction relates to an area of considerable relevancy, and the denial was prejudicial.

---

1. *United States v. Fleming,* 594 F.2d 598 (7th Cir.), *cert. denied,* 442 U.S. 931, 99 S.Ct. 2863, 61 L.Ed.2d 299 (1979), is not to the contrary. There, defendants kidnapped a woman to acquire her car for use in a bank robbery. Defendants claimed that her murder occurred prior to the robbery, but the court held that the evidence supported the finding that the victim was killed after the robbery, and that it fell within the statutory prohibition. *Id.* at 608. The court did not hold, however, that a murder occurring prior to a robbery fell outside the ambit of § 2113(e).

*Chipman v. Mercer,* 628 F.2d 528, 533 (9th Cir.1980). Parrish's cooperation with the government is clearly relevant to bias; our inquiry therefore focuses upon whether the jury otherwise had sufficient information to appraise Parrish's bias and motives. *United States v. Ray,* 731 F.2d 1361, 1364–65 (9th Cir.1984).

■ Parrish testified in detail about the time, place and substance of his meeting with Jackson and other robbery participants, and the jury was repeatedly made aware that Parrish was paid $500 for his agreement to notify authorities of any future contacts with Jackson. Therefore, the jury had sufficient information to appraise Parrish's bias and motives, and cross-examination about his subsequent cooperation with law enforcement agencies could reasonably have been seen as cumulative.

It is not an abuse of discretion to limit cross-examination of an informant for bias where the jury already has sufficient evidence of bias. Thus in *United States v. Salsedo,* 607 F.2d 318, 321 (9th Cir.1979) we found that the trial court did not abuse discretion in limiting cross-examination of an informant where defense counsel had elicited the fact that the informant had worked for the DEA in the past. *See also, United States v. Wood,* 550 F.2d 435, 440 (9th Cir.1976) (cross-examination was not improperly restricted where informant was questioned about drug use, past confrontation with the law, and his experience with firearms, but not other possible "deals" with the DEA).

The trial judge also noted that revealing evidence of Parrish's cooperation with the FBI might endanger both Parrish and an ongoing investigation. Other circuits have upheld limitation of cross-examination under such circumstances. *E.g., United States v. Hirst,* 668 F.2d 1180, 1184 (11th Cir.1982); *United States v. Gray,* 626 F.2d 494, 499–500 (5th Cir.1980), *cert. denied,* 449 U.S. 1091, 101 S.Ct. 887, 66 L.Ed.2d 820 (1981). The district judge did not abuse his

discretion in limiting the cross-examination of Parrish.

AFFIRMED.

FERGUSON, Circuit Judge, concurring:

I concur in the foregoing decision, but disagree with the majority's dictum which says that section 2113(e) applies to these facts. Because I am convinced that the section does not apply, and because no court has extended it to a murder which occurred hours before a robbery, I must disagree with the majority's attempt to extend the statute. Not only did the murder occur hours before the robbery, but defendant Jackson was exonerated of the murder. I would not ignore the jury's factual finding of innocence and extend the statute in disregard of that verdict. Extension of the statute is totally unnecessary for our decision, and I believe the majority's dictum which does so is unsound.

Section 2113(e) provides enhanced punishment for bank robberies in which there is "aggravating" conduct in addition to the basic section 2113(a) offense. The applicability of the enhanced punishment depends, of course, on whether the actor's conduct fits within the precise language of the enhancement subsection. *United States v. Jones,* 678 F.2d 102, 104 (9th Cir.1982).

The precise language of section 2113(e) is:

Whoever, *in committing any offense defined in this section, or in avoiding or attempting to avoid apprehension* for the commission of such offense, *or in freeing himself or attempting to free himself* from arrest or confinement for such offense, kills any person, or forces any person to accompany him without the consent of such person, shall be imprisoned not less than ten years, or punished by death if the verdict of the jury shall so direct.

18 U.S.C. § 2113(e) (emphasis added).

The statute was originally enacted against a background of national concern with interstate bank robberies. The language of the subsection itself, unchanged since 1934, demonstrates the congressional

purpose was to provide protection for banks, bank personnel, customers, law enforcement officers and those who aid them in capturing bank robbers, by enhancing the punishment of one who kills or kidnaps a person while "committing any offense defined in this Act." The offense defined in the Act is bank robbery.

As the majority has shown, there are cases which have held that killings which happen even long after the robbery may be section 2113 violations, if the defendant was attempting to escape or avoid capture. Extensive research has uncovered not one single case in which a killing four or five hours *before* the robbery has been held to be a violation of this code section. I interpret *United States v. Fleming*, 594 F.2d 598 (7th Cir.), *cert. denied*, 442 U.S. 931, 99 S.Ct. 2863, 61 L.Ed.2d 299 (1979), differently from the majority. The Seventh Circuit made a factual finding that the murder occurred after the robbery and, therefore, fell plainly within the statutory prohibition. The court, in a footnote, said: "Defendants contend that the killing ... could have just as easily occurred before the robbery but the evidence amply supports the finding that [she] was killed after the robbery." *Id.* at 608 n. 15. The reasonable inference from the court's footnote is that *before* and *after* made a difference in the court's decision.

Therefore, I cannot agree that the defendant was properly charged under section 2113(e), and I think the admission of the murder evidence was error. Under the *Chapman* standard, the error was harmless as Jackson was acquitted of the murder charge, and there was substantial independent evidence of his participation in the bank robbery. Therefore, the prejudice that flowed from the murder evidence was harmless beyond a reasonable doubt. *Chapman v. California*, 386 U.S. 18, 24, 87 S.Ct. 824, 828, 17 L.Ed.2d 705 (1967).

Congress may well want to amend the statute, but it is not the function of the judiciary to do so.