UNITED STATES of America

v.

**Francisco Martin DURAN, Defendant.**

**Crim. No. 94–447 (CRR).**

United States District Court, District of Columbia.

March 16, 1995.

Leigh A. Kenny, Federal Public Defender for D.C., Washington, DC, for defendant Francisco Martin Duran.

Eric A. Dubelier, Brenda Jene Johnson, U.S. Attys. Office, Washington, DC, for U.S.

## ORDER

CHARLES R. RICHEY, District Judge.

Before the Court are the Defendant Duran's Motion to Suppress Evidence Seized From Chevrolet Truck, the Government's Opposition thereto, and the Defendant's Reply. The Court held an evidentiary hearing on said Motion on March 14, 1995.

Pursuant to the Fourth Amendment and Rule 12(b)(3) of the Federal Rules of Criminal Procedure, the Defendant seeks an Order suppressing all evidence seized by federal agents from his 1989 Chevrolet pickup truck on October 29 and 30, 1994, or any other time, and any fruits thereof. As grounds therefor, the Defendant argues that federal agents conducted an illegal warrantless search of his truck on October 29, 1994. The Defendant further asserts that the search warrant secured thereafter was so lacking in probable cause that no reasonable agent could rely upon it and that, even if the warrant were supported by probable cause, the agents' search exceeded the scope of the warrant in violation of the Fourth Amendment.

In Opposition, the Government contends that the officers properly searched the vehicle without a warrant pursuant to the "automobile exception" to the warrant requirement, and that exigent circumstances also justified the decision to do so. In addition, the Government argues that even if the initial search was in error, the agents validly searched the car after it was towed to FBI headquarters pursuant to the warrant later executed by a Magistrate Judge of this Court. Finally, the Government contends that the Defendant's Motion must be denied because the evidence in the vehicle would have been discovered during the standard

inventory search conducted at FBI headquarters.

Upon careful consideration of the pleadings extant, the oral argument of counsel, the relevant law, and the entire record in this case, the Court agrees with the Government and finds that the Defendant's Motion shall be denied.

### BACKGROUND

On October 29, 1994 at approximately 3:00 p.m., the Defendant allegedly fired numerous rounds of ammunition from a Norinco SKS semiautomatic weapon in the vicinity of the White House. A tourist tackled the Defendant as he tried to reload his weapon. Officers from the United States Secret Service then subdued the Defendant and arrested him. The Secret Service recovered the Norinco SKS semiautomatic weapon from the Defendant.

Agent Mark Marek took the Defendant into custody. Agents of the Secret Service searched him incident to arrest, recovering a wallet containing a note with the words "Hey Secret Service!" The note further advised the agents that the Defendant had parked his Chevrolet pick-up truck in the vicinity of the White House and requested that the vehicle be returned to his wife at a certain address in Colorado.

Based on the information in the note and other information in the Defendant's wallet, law enforcement officers located the truck at approximately 3:30 p.m. on the east side of 17th Street, N.W., just north of D Street. Law enforcement authorities immediately closed 17th Street, N.W., between D and E Streets, to all vehicular and civilian traffic for fear that the vehicle might contain an explosive device.

Thereafter, the agents summoned a Secret Service Explosive Detection Team (EDT) Officer to the scene, along with his specially-trained canine, "Arno." Arno swept the exterior of the vehicle to determine if it contained any explosives, but this sweep met with negative results.

Between approximately 5:30 and 7:30 p.m. Secret Service Supervisory Special Agent Steve Schenk was in telephonic contact with Assistant United States Attorney Joseph Valder. A decision was made to impound the vehicle and tow it to FBI headquarters. In order to ensure that the vehicle did not contain an explosive device, however, AUSA Valder authorized bomb technicians to enter the vehicle to conduct a limited protective sweep for explosive materials, as is standard procedure following a dog sweep.

At approximately 8:00 p.m., at the direction of Secret Service Agent Steve Schenk and with AUSA Valder's approval, Metropolitan Police Department bomb technician Paul Friedlander and his assistant used the keys found on the Defendant's person incident to his arrest to enter the truck in order to inspect the vehicle for explosives. Thereafter, after conducting a standard "RSP" or "render safe procedure," Officer Friedlander declared the vehicle free of explosives.

During this inspection of the truck, the technicians observed, *inter alia,* one Mossberg 410 gauge shotgun, lying in the crack between the tailgate and the bed of the truck. Although the officers did not seize *the gun or other materials at this time,* a Secret Service technician on the scene did photograph them.

Later that evening, the truck was towed to the Federal Bureau of Investigation's (FBI) headquarters, at which time Special Agent Brad Garrett took custody of the vehicle.

In the meantime, agents from the Secret Service, FBI and the Bureau of Alcohol, Tobacco and Firearms (ATF) gathered information in support of a search warrant for the vehicle. Special Agent Thomas Cannon of the ATF prepared an affidavit in support of a search warrant, and submitted it to United States Magistrate Judge Deborah A. Robinson at approximately 12:00 a.m. on October 30, 1994. The affidavit did not advise the Magistrate Judge that federal agents had already entered the truck and taken photographs of its contents.

Thereafter, on October 30, 1994, the agents maintaining custody of the vehicle at the FBI learned that a search warrant had been approved. Agent Garrett and other federal agents then searched the vehicle and seized numerous pieces of evidence. In pertinent

part, the warrant authorized agents to search for:

firearms, ammunition, photographs of firearms or persons possessing firearms, receipts relating to the acquisition of any firearms or ammunition, papers showing ownership of the vehicle, roadmaps or other documents relating to travel to Washington, D.C.

*See* Government's Exhibit 160–1.

### DISCUSSION

**I. BECAUSE THE OFFICERS HAD PROBABLE CAUSE TO BELIEVE THE VEHICLE CONTAINED EVIDENCE OF A CRIME, THE WARRANTLESS SEARCH WAS VALID PURSUANT TO THE "AUTOMOBILE EXCEPTION"**

"The Fourth Amendment protects the 'right of people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures,'" and this right is "preserved by a requirement that searches be conducted pursuant to a warrant issued by an independent judicial officer." *California v. Carney*, 471 U.S. 386, 390, 105 S.Ct. 2066, 2068, 85 L.Ed.2d 406 (1985). Of course, there are exceptions to the warrant requirement, one of which is the so-called "automobile exception" at issue here. *Id.* Under the vehicle exception, "'the search otherwise [must be such] as the magistrate could authorize.'" *Id.* at 394, 105 S.Ct. at 2071 (quoting *United States v. Ross*, 456 U.S. 798, 823, 102 S.Ct. 2157, 2172, 72 L.Ed.2d 572 (1982)). In other words, "[a] warrantless search of a motor vehicle parked in a public place is permissible, with or without exigent circumstances, provided the searching authorities have probable cause to believe the vehicle contains contraband" or evidence of a crime. *United States v. Wider*, 951 F.2d 1283, 1286 (D.C.Cir.1991); *See also Chambers v. Maroney*, 399 U.S. 42, 48, 90 S.Ct. 1975, 1979–80, 26 L.Ed.2d 419 (1970).

██ Here, the Court finds that, under the totality of the circumstances, the agents had probable cause to search the Defendant's truck pursuant to the automobile exception. First, it is undisputed that federal authorities

had probable cause to arrest the Defendant after he allegedly fired a semiautomatic weapon in the vicinity of the White House and was tackled by civilians. Upon recovery of a note from the Defendant's wallet, addressed to the Secret Service, and describing the Chevrolet truck as parked near the White House, "there was a 'fair probability' that the vehicle contained additional evidence of [criminal] activity and therefore probable cause to search it." *Wider*, 951 F.2d at 1286. *Cf. United States v. Caroline*, 791 F.2d 197, 201 (D.C.Cir.1986) (probable cause to search car where the defendants used it in crime spree).

Moreover, probable cause must be considered "from the particular viewpoint of the officer involved in the search or seizure." *United States v. Prandy–Binett*, 995 F.2d 1069, 1071 (D.C.Cir.1993), *cert. denied*, —— U.S. ——, 114 S.Ct. 1196, 127 L.Ed.2d 545 (1994). "Law enforcement officers naturally reach conclusions based on their training and experience." *Id.* In the instant case, the Secret Service agents relied on their knowledge and experience to conclude that the Defendant's note indicated that the vehicle could be connected, through use of explosives or other contraband, to a wider plot to harm the President or the agents themselves. "In cases of searches or seizures without warrants, the court's role is to decide whether the officer's inference from the facts was 'reasonable.'" *Id.* (quoting *United States v. Ortiz*, 422 U.S. 891, 897, 95 S.Ct. 2585, 2589, 45 L.Ed.2d 623 (1975)). The Court cannot but read the facts revealed at the evidentiary hearing to find that the agents' conduct was reasonable.

Further, "probable cause can be, and often is, inferred by 'considering the type of crime, the nature of the items sought ... and normal inferences about where a criminal might hide ... property.'" *United States v. Jones*, 994 F.2d 1051, 1056 (3rd Cir.1993) (quoting *United States v. Jackson*, 756 F.2d 703, 705 (9th Cir.1985)). Here, the Defendant is charged with very serious crimes, and the Secret Service Agents, trained to protect the President, reasonably concluded that evidence of any scheme to murder the President or harm federal agents would very likely be

located in the Defendant's vehicle. As Special Agent Steve Schenk repeatedly testified, the safety and security of the President is of utmost importance, and a note with the message "Hey Secret Service" visibly protruding from the billfold of a suspect who just fired numerous rounds at the White House is ample cause for alarm and suspicion justifying a search of his vehicle pursuant to the automobile exception. Indeed, "[t]he Nation undoubtedly has a valid, even an overwhelming, interest in protecting the safety of its Chief Executive and in allowing him to perform his duties without interference from threats · of physical violence." *Watts v. United States,* 394 U.S. 705, 707, 89 S.Ct. 1399, 1401, 22 L.Ed.2d 664 (1969).

In sum, the Court finds that, because there was probable cause to believe that the vehicle would contain contraband or other evidence of a crime, the agents could validly search the vehicle under the automobile exception to the warrant requirement.

## II. THE COURT FURTHER FINDS THAT EXIGENT CIRCUMSTANCES JUSTIFIED THE AGENTS' DECISION TO ENTER THE VEHICLE WITHOUT A WARRANT

■ As a separate ground justifying a warrantless search, the Court finds that exigent circumstances existed necessitating prompt action to ensure against any threat to the public. "The test for exigent circumstances is whether the police had 'an urgent need' or 'an immediate major crisis in the performance of duty afford[ing] neither ·time nor opportunity to apply to a magistrate.'" *United States v. Johnson,* 802 F.2d 1459, 1461 (D.C.Cir.1986) (quoting *Dorman v. United States,* 435 F.2d 385, 391 (D.C.Cir. 1970) (internal quotation marks omitted)). As with · the automobile exception, government agents must have probable cause to rely on the exigent circumstances exception. *United States v. Halliman,* 923 F.2d 873, 878 (D.C.Cir.1991). Moreover, "failure promptly to seek a warrant does not automatically disqualify the police from relying on exigent circumstances." *Id.* at 879. Rather, time is only one factor to consider in determining whether officers' conduct was reasonable. *Id.*

Here, although the agents entered the truck several hours after the dog failed to alert, the investigating agents reasonably suspected that the vehicle itself posed a threat to the President, federal agents, and the public and acted upon this suspicion by sending bomb technicians in to secure the vehicle. "Exigent circumstances are frequently found when dangerous explosives are involved." *United States v. Lindsey,* 877 F.2d 777, 781 (D.C.Cir.1989). *See also Dorman v. United States,* 435 F.2d at 391, 393 (relevant to exigent circumstances determination is the potential danger to the community, whether a grave offense is involved, and whether there was probable cause to believe that the suspect committed the crime involved). While the Defendant appears to suggest that the canine sweep was sufficient to allay any fear of explosives, as MPD bomb technician Friedlander testified, a dog sweep is always followed by a manual check to ensure the safety of the vehicle. Accordingly, the Court finds no error in the officers' entry of the vehicle to ensure it was safe from explosives.

## III. THERE WAS AMPLE PROBABLE CAUSE FOR THE ISSUANCE OF A SEARCH WARRANT

■ The Supreme Court has made clear that, "[f]or constitutional purposes, we see no difference between on the one hand seizing and holding a car before presenting the probable cause issue to a magistrate and on the other hand carrying out an immediate search without a warrant. Given probable cause to search, either course is reasonable under the Fourth Amendment." *Chambers,* 399 U.S. at 52, 90 S.Ct. at 1981. Thus, the same probable cause determination discussed above informs the Magistrate Judge's decision to issue the warrant. Again, the "commonsense, practical question [is] whether there is 'probable cause' to believe that contraband or evidence is located in a particular place." *Illinois v. Gates,* 462 U.S. 213, 230, 103 S.Ct. 2317, 2328, 76 L.Ed.2d 527 (1983). And again, the Court finds that the affidavit submitted to Magistrate Judge Robinson amply

supported her determination that there was probable cause to issue a search warrant.

The Defendant's argument to the contrary is unavailing; as indicated above, the serious nature of the offense as well as other "objective circumstances" lead to the conclusion that the warrant was valid under the Fourth Amendment. *United States v. Mitchell,* 951 F.2d 1291, 1295 (D.C.Cir.1991), *cert. denied,* 504 U.S. 924, 112 S.Ct. 1976, 118 L.Ed.2d 576 (1992). In particular, the Magistrate Judge issued the warrant with full knowledge of the shooting at the White House, the Defendant's convicted felon status, the note from the Defendant's wallet directing agents to his vehicle, as well as the seizure of a semiautomatic weapon from the Defendant's person following his arrest. In light of all this information, the Court cannot find that the warrant was lacking in probable cause.

## IV. THE SEIZURE OF ITEMS BEYOND THE TERMS OF THE SEARCH WARRANT APPROVED BY A UNITED STATES MAGISTRATE JUDGE DOES NOT RENDER THE SEARCH INVALID

■ While the Defendant argues that the affidavit was defective for failing to advise the Magistrate Judge of federal officials' prior warrantless entry of the vehicle, Motion at 7, the law is just the opposite; that is, assuming arguendo that the initial search was unlawful, the evidence obtained through that search *cannot* be used to establish probable cause before a magistrate. *Murray v. United States,* 487 U.S. 533, 540, 108 S.Ct. 2529, 2534–35, 101 L.Ed.2d 472 (1988). Rather, "if the agents' decision to seek the warrant was prompted by what they had seen during the initial entry, or if information obtained during that entry was presented to the Magistrate and affected his [or her] decision to issue the warrant," the later search could not be upheld. *Id.* at 542, 108 S.Ct. at 2535–36 (footnote omitted). Agent Cannon credibly testified that, when he prepared the affidavit in support of the search warrant, he had no knowledge of federal agents' prior entry of the vehicle in search of explosives.

■ In addition, the Defendant's assertion that missing details rendered the affidavit "affirmatively misleading" does nothing to impact the probable cause inquiry at bar. Motion at 6 n. 5. Indeed, "an inaccurate statement in a warrant affidavit invalidates a warrant only if the statement was both 'material to the issue of probable cause,' and 'made knowingly and intentionally, or with reckless disregard for the truth.'" *United States v. Warren,* 42 F.3d 647, 653 (D.C.Cir. 1994) (quoting *United States v. Richardson,* 861 F.2d 291, 294 (D.C.Cir.1988), *cert. denied,* 489 U.S. 1058, 109 S.Ct. 1325, 103 L.Ed.2d 593 (1989)). While the omissions do not, in and of themselves, invalidate the probable cause determination, there is no allegation that the affiant made the mistake knowingly, intentionally or with reckless disregard for the facts. Rather, because affidavits are "normally drafted by nonlawyers in the midst and haste of a criminal investigation," "hypertechnical reading[s]" must be rejected. *Id.* (quoting *United States v. Ventresca,* 380 U.S. 102, 108, 85 S.Ct. 741, 745–46, 13 L.Ed.2d 684 (1965)). *See also United States v. Anderson,* 851 F.2d 384, 390 (D.C.Cir.1988) (technical defects under Rule 41 do not call for exclusion of the evidence produced by the search), *cert. denied,* 488 U.S. 1012, 109 S.Ct. 801, 102 L.Ed.2d 792 (1989).

■ The Defendant further argues that the agents failed to comply with the particularity requirement by seizing materials outside the four corners of the warrant. Even if a warrant is supported by probable cause and written with sufficient particularity, "the search itself must be conducted in a reasonable manner, appropriately limited to the scope and intensity called for by the warrant." *United States v. Heldt,* 668 F.2d 1238, 1256 (D.C.Cir.1981), *cert. denied,* 456 U.S. 926, 102 S.Ct. 1971, 72 L.Ed.2d 440 (1982) (footnotes omitted). However, "where officers seize some items outside the scope of a valid warrant, this by itself will not affect the admissibility of other contemporaneously seized items which do fall within the warrant." *Id.* at 1257. Thus, the question at bar is whether any items seized outside the scope of the warrant must be suppressed. The Court finds no justification for suppressing any evidence seized pursuant to the search warrant.

"A proper execution of a search warrant for numerous documents requires three things: adequate preparation; obedience to area limitations; and restrictions on seizure of items not mentioned particularly in the warrant." *Id.* at 1261. The third of these elements is the only one at issue here.

The return of the warrant indicates that the agents initially seized numerous items, including clothing, books, and a stuffed animal. "[W]hen law officers seize an incriminating [item of evidence], clearly tied to items designated in the warrant, there is no justification for suppressing it." *In re Search Warrant Dated July 4, 1977,* 667 F.2d 117, 125 (D.C.Cir.1981), *cert. denied sub nom.,* 456 U.S. 926, 102 S.Ct. 1971, 72 L.Ed.2d 441 (1982). Here, FBI agents believed that each of these articles was relevant to an assessment of the Defendant's travel, a category of material sought by the warrant. In particular, Agent Garrett testified that he and other agents seized these and other items in order to determine where they were purchased and, in turn, to substantiate possible places that the Defendant stopped during his travels. The Court finds that the agents acted reasonably in seizing these materials which were, in the Court's view, clearly tied to items designated in the warrant.

## IV. THE EVIDENCE SEIZED FROM THE VEHICLE IS ADMISSIBLE UNDER THE INEVITABLE DISCOVERY DOCTRINE AS IT WOULD HAVE BEEN DISCOVERED DURING A STANDARD INVENTORY SEARCH AT FBI HEADQUARTERS

■ Finally, the Court finds that, notwithstanding all of the above discussion, the evidence seized from the truck is admissible under the inevitable discovery doctrine, as the same would have been discovered through a routine inventory search at FBI headquarters. " '[W]hen ... evidence ... would inevitably have been discovered without reference to the police error or misconduct, there is no nexus sufficient to provide a taint and the evidence is admissible.' " *United States v. Gale,* 952 F.2d 1412, 1416 (D.C.Cir.) (quoting *Nix v. Williams,* 467 U.S. 431, 448, 104 S.Ct. 2501, 2511, 81 L.Ed.2d 377

(1984)), *cert. denied,* 503 U.S. 923, 112 S.Ct. 1302, 117 L.Ed.2d 524 (1992). The Defendant's Motion to Suppress shall therefore be denied.

Accordingly, it is, by the Court, this 15 day of March, 1995,

ORDERED that the Defendant Duran's Motion to Suppress Evidence Seized From Chevrolet Truck shall be, and hereby is, DENIED.