106 F.3d 409
 NOTICE: Ninth Circuit Rule 36-3 provides that dispositions other than opinions or orders designated for publication are not precedential and should not be cited except when relevant under the doctrines of law of the case, res judicata, or collateral estoppel.
UNITED STATES of America, Plaintiff-Appellee,
v.
Markham David BOND, Defendant-Appellant.
 No. 95-50048.
 United States Court of Appeals, Ninth Circuit.
 Argued and Submitted Feb. 5, 1996.
Decided Dec. 27, 1996.
Order Amending Memorandum and Denying Rehearing and
Rehearing En Banc May 6, 1997.
 
 Before: BEEZER, BRUNETTI, and NOONAN, Circuit Judges.
 
 
 1
 MEMORANDUM*
 
 
 2
 Markham David Bond was convicted of two counts of armed bank robbery in violation of 18 U.S.C. §§ 2113 (a) and (d); two counts of robbery affecting interstate commerce in violation of 18 U.S.C. § 1951; and two counts of use of firearm during and in relation to a crime of violence in violation of 18 U.S.C. § 924(c). He argues that the district court erred in not excluding evidence obtained during a warrantless search of his vehicle on July 5, 1994.
 
 
 3
 On March 2, 1994, a man posing as a postal carrier robbed an armored car outside a credit union in Buena Park, California. While fleeing the scene, the robber dropped several pieces of mail. On July 5, two individuals robbed two Wells Fargo employees while they were refilling an ATM with cash. The robbers fled with two bags containing more than $300,000.
 
 
 4
 Fingerprints on the mail dropped during the first robbery were identified as Bond's. Armed with search and arrest warrants, the FBI searched Bond's apartment on March 4 but found no evidence. While the agents were at the apartment, Bond's father arrived to move his son's items.
 
 
 5
 On July 5, unaware of the second robbery which was committed earlier that day, agents learned of Bond's new address. The manager of the complex identified Bond from a picture as a tenant of the building and said that Bond drove a silver Mercedes "low rider" and often used a pay phone at a nearby gas station. Later that day, the manager informed agents that Bond had notified him that he was moving out and that someone would come by later to collect his belongings. On their way back to the complex, agents spotted Bond using the gas station pay phone and arrested him.
 
 
 6
 With Bond in custody, the agents returned to the complex in search of his car. In the parking lot, they spotted a vehicle matching the manager's description. A search of the license plates revealed that the automobile was owned by a relative of Bond. The automobile dealer reported that Bond purchased the car on March 3 with a trade-in and $9,500 in cash. The agents searched the car and found in the trunk a black gym bag containing a black semiautomatic handgun and approximately $48,000 in $20 bills.
 
 
 7
 At the suppression hearing Special Agent Brown testified that, based on the apartment manager's statements, agents believed that Bond was preparing to flee the area. He said that in his experience robbers typically keep a gun on their person or in close proximity rather than in a residence, even four months after the robbery. When asked why they did not wait for a search warrant, Brown explained that they were afraid a friend or relative might have access to the car and could remove incriminating items. On cross-examination he reiterated his belief that "currency, money, the gun ..." would be in the vehicle. When asked whether he had "specific evidence" indicating that the same weapon used on March 2 would be in the Mercedes on July 5, he said "the same weapon, no."
 
 I.
 
 8
 Bond argues that the automobile exception does not apply because his vehicle was parked on private property more than two blocks away from the site of the arrest, was not lawfully stopped, and was not readily mobile. However, in United States v. Hatley, this court applied the exception in a virtually identical situation. 15 F.3d 856, 858-59 (9th Cir.1994). In Hatley, the subject was arrested in his Honda and brought back to his house where police searched his Corvair which was inoperable. Id. at 858 Like Bond's Mercedes, the Corvair was on private property, was blocks away from the arrest, had not been lawfully stopped, and was, unlike Bond's Mercedes, actually immobile. Id. Under Hatley, the automobile exception applies and thus the agents did not need a search warrant so long as they had probable cause to believe incriminating evidence would be found in the Mercedes. See id.
 
 II.
 
 9
 "[P]olice may search an automobile and the containers within it where they have probable cause to believe contraband or evidence is contained." California v. Acevedo, 500 U.S. 565, 580 (1991). Probable cause is a "fair probability that contraband or evidence of a crime will be found in a particular place." Illinois v. Gates, 462 U.S. 213, 238 (1983). A probable cause determination is a common sense inquiry based on the totality of circumstances. Id.
 
 
 10
 Bond argues that the agents lacked probable cause to search the car because they relied on evidence which was four months old and thus stale and lacked fresh evidence. Bond relies heavily on Agent Brown's testimony on cross-examination that he did not have any "specific evidence" that the gun used on March 2 would be in the Mercedes on July 5.
 
 
 11
 The passage of four months between the robbery and the search does not preclude a finding of probable cause. See United States v. Jackson, 756 F.2d 703, 705 (9th Cir.1985); United States v. Gann, 732 F.2d 714, 722 (9th Cir.1987), cert. denied, 469 U.S. 1034 (1987); United States v. Collins, 559 F.2d 561, 564 (9th Cir.1977), cert. denied, 434 U.S. 907 (1977). Whether or not information is too stale depends on whether there are "good reasons" to believe the items will still be in the area to be searched. Gann, 732 F.2d at 722. In Gann, as here, agents testified that robbers typically leave "weapons, ammunition, and clothing in their cars or residences." Id. Based on that and other testimony, the court concluded there was probable cause to search a suspect's vehicle and residence three weeks after a bank robbery. Id. In Jackson, the court concluded that it was a "reasonable inference" that the subject would keep stolen currency in his apartment two months after the robbery. 756 F.2d at 705. Noting that residential search warrants had been upheld in cases involving delays of three-and-a-half months, the court emphasized that "[t]he money was somewhere." Id.[1]
 
 
 12
 The totality of circumstances indicates there was probable cause on July 5 to search the Mercedes. See United States v. Grandstaff, 813 F.2d 1353, 1358 (9th Cir.1987), cert. denied, Brown v. United States, 484 U.S. 837 (1987); Jackson, 756 F.2d at 705. In Grandstaff, this Court reasoned that the fact that a search of a bank robber's apartment yielded no incriminating evidence suggested the evidence might be in a nearby vehicle. 813 F.2d at 1358. It was the day of the search, July 5, that agents learned that Bond was planning to leave the area imminently and that someone else would collect his belongings. They were justified in believing that Bond kept the money and/or a gun in his car since they were not on his person when they arrested him and he was abandoning his apartment; the car was the most logical location. See id. Therefore the agents' suspicion that evidence would be found in the car was supported by probable cause. See Gates, 462 U.S. at 238 (probable cause is a "fair probability that contraband or evidence of a crime will be found in a particular place").
 
 
 13
 Agent Brown's statement on cross-examination is not to the contrary. When Agent Brown said "the same weapon, no," he was responding to a question of whether he had specific evidence indicating that evidence from the March 2 robbery would be in the car on July 5. "Direct evidence linking criminal objects to a particular site is not required for the issuance of a search warrant." Jackson, 756 F.2d at 705. Thus agents did not need to have the evidence demanded by Bond's counsel. Agent Brown consistently testified that agents believed the Mercedes contained evidence from the first robbery because Bond was about to flee the area and robbers typically keep weapons and stolen money nearby. That testimony was sufficient for a finding of probable cause.
 
 
 14
 AFFIRMED.
 
 
 15
 Before: BEEZER, BRUNETTI, and NOONAN, Circuit Judges.
 
 
 16
 ORDER AMENDING MEMORANDUM AND DENYING PETITION FOR REHEARING
 
 WITH SUGGESTION FOR REHEARING EN BANC
 
 17
 The memorandum filed December 27, 1996 is amended by adding the following paragraph at the end:
 
 
 18
 In order to preserve an objection to a denial of a motion to sever for appeal, a defendant must renew the motion at the close of evidence, or it is waived. United States v. Sanchez-Lopez, 879 F.2d 541, 551 (9th Cir.1989); United States v. Burgess, 791 F.2d 676, 678 (9th Cir.1986). The record reflects that Bond failed to renew his motion for severance; he thus waived the issue on appeal.
 
 
 19
 AFFIRMED.
 
 
 20
 With this amendment, the panel has voted to deny appellant's petition for rehearing. Judges Brunetti and Noonan have voted to reject the suggestion for rehearing en banc and Judge Beezer so recommends.
 
 
 21
 The full court has been advised of the suggestion for rehearing en banc and no active judge has requested a vote on whether to rehear the matter en banc. Fed.R.App.P. 35.
 
 
 22
 The petition for rehearing is denied and the suggestion for rehearing en banc is rejected.
 
 
 
 *
 This disposition is not appropriate for publication and may not be cited to or by the courts of this circuit except as provided by 9th Cir.R. 36-3
 
 
 [1]
 Jackson, Collins, and Gann all involve magistrates' findings of probable cause. While it is true that those findings are only reviewed for substantial basis, in neither Collins nor Gann was the court's analysis of staleness tied to that standard of review. In Jackson, this court not only found that it was "apparent" there was a substantial basis but also concluded that it was "a reasonable inference" that the money would be in the apartment. 756 F.2d at 705