

2002 Decisions

Opinions of the United
States Court of Appeals
for the Third Circuit

7-18-2002

# USA v. Jones

Precedential or Non-Precedential: Non-Precedential

Docket No. 01-3282

Follow this and additional works at: http://digitalcommons.law.villanova.edu/thirdcircuit_2002

Recommended Citation

"USA v. Jones" (2002). *2002 Decisions.* Paper 412.
http://digitalcommons.law.villanova.edu/thirdcircuit_2002/412

This decision is brought to you for free and open access by the Opinions of the United States Court of Appeals for the Third Circuit at Villanova
University School of Law Digital Repository. It has been accepted for inclusion in 2002 Decisions by an authorized administrator of Villanova
University School of Law Digital Repository. For more information, please contact Benjamin.Carlson@law.villanova.edu.

UNITED STATES COURT OF APPEALS FOR THE THIRD CIRCUIT


NO. 01-3282


UNITED STATES OF AMERICA

v.

JAMES ALLEN JONES


On Appeal from the United States District Court
for the Eastern District of Pennsylvania
(D.C. Crim. 99-cr-00175-2)
District Judge:  Hon. Anita B. Brody


Submitted Under Third Circuit LAR 34.1(a)
June 10, 2002

Before:  SLOVITER, ROTH, and McKEE, Circuit Judges

(Filed:  July 18, 2002)


OPINION OF THE COURT SLOVITER, Circuit Judge.
James Allen Jones appeals from the District Court's denial of his motion to suppress his confession to armed bank robbery and the court's failure to specify a schedule for Jones's restitution payments under the Mandatory Victims Restitution Act. After indictment in the United States District Court for the Eastern District of Pennsylvania, Jones entered a conditional guilty plea to one count of conspiracy to commit armed bank robbery, in violation of 18 U.S.C.  371; one count of armed bank robbery, in violation of 18 U.S.C.  2113(d); and one count of using and carrying a firearm during a crime of violence, in violation of 18 U.S.C.  924(c)(1).  Jones's plea was conditioned on reserving his right to take this appeal.  Pursuant to his plea, Jones was sentenced to 77 months in prison, a mandatory 60-month consecutive sentence on the 18 U.S.C.  924(c)(1) firearm count, five years of supervised release, $40,789.49 in restitution, and $300 in special assessments.
According to Jones, the search warrant authorizing the search of his residence which preceded his arrest lacked probable cause and was based on an affidavit containing false statements made with knowing and intelligent or reckless disregard for the truth.  Jones also argues, and the government concedes, that the District Court erred in failing to specify the schedule of Jones's restitution payments.  We will affirm in all respects, except as regards the last issue, as to which we will remand.
The District Court had jurisdiction under 18 U.S.C.  3231.  This court has jurisdiction pursuant to 28 U.S.C.  1291 and 18 U.S.C.  3742.
I.
Jones first argues that the District Court erred in concluding that the search warrant was supported by probable cause because (1) the information in the supporting affidavit was three months old and concerned a one-time crime with guns that were likely to have been disposed of, and was therefore stale, (2) the information in the supporting

affidavit did not establish any nexus between the weapons sought and Mr. Jones's home, and (3) the officers executing the warrant did not exercise objective good faith in relying on the warrant. This court applies "the same standard the District Court was required to apply . . . determin[ing] whether the magistrate who issued the warrant had a 'substantial basis' for determining that probable cause existed." United States v. Zimmerman, 277 F.3d 426, 432 (3d Cir. 2002) (citation omitted).

The parties are familiar with the facts, and we repeat them only briefly. Although we reject all of Jones's bases for challenging the finding of probable cause, we focus here on the claim of staleness. In that connection, it is important to understand the nexus between the crimes for which Jones was convicted and the investigation into the killing of his brother.

Three armed men robbed a PNC bank in Lansdowne, Pennsylvania on March 31, 1997. A month later, on April 29, 1997, Marcus Jones, Jones's brother, was killed in a shoot-out on a corner in North Philadelphia. On the morning of July 31, 1997, law enforcement officers searched James Jones's home pursuant to the search warrant at issue here, which was issued that day in connection with an investigation by the Philadelphia Police into Marcus Jones's death. After finding firearms, the officers arrested Jones in connection with his brother's death. That morning Jones confessed to participating in the death of Marcus Jones as well as the March 31, 1997 armed robbery which concerns this appeal.

The warrant that Jones challenges on appeal was issued pursuant to an affidavit in support of the application for the search warrant that was drafted and typed by Detective John McDermott of the Homicide Unit of the Philadelphia Police Department. McDermott's affidavit relied on two sources, a confidential informant and the confession of Patrick Palmer, Jones's co-defendant.

The affidavit states that the confidential informant told Detective Paul Sawicki of the Firearms Trafficking Task Force that Patrick Palmer was responsible for Marcus Jones's accidental death, which occurred in a shoot-out with rival drug dealers, and that James Jones and Lance Grant, Marcus's brothers, were also involved in the shooting. The informant claimed to have been acquainted with James Jones, his two brothers, and Patrick Palmer, and told Sawicki that James Jones had described the circumstances of the shooting to the informant. The informant also reported that James Jones had provided the guns used in the firefight in which Marcus Jones was killed, and that the informant had observed James Jones with guns on a number of occasions. McDermott's affidavit also related how the informant had met with Sawicki on July 17, 1997 to identify the residence and vehicles used by James Jones.

McDermott's affidavit next states that on July 24, 1997 Patrick Palmer, James Jones's co-defendant, confessed to shooting Marcus Jones. Palmer's description of the circumstances of Marcus Jones's death corroborated the informant's report. Palmer also confirmed that James Jones had supplied the guns used in the shooting. Palmer added that Jones had had the guns for at least one month prior to the shooting.

After reviewing the affidavit in support of the warrant, the District Court found "that the search warrant on its face provided ample probable cause to search the defendant's residence on July 31st, 1997." App. at 7. Jones contends that the search warrant was not supported by probable cause because the information in the supporting affidavit was stale and established no connection between the guns and Jones's residence.

Our review for discerning probable cause is limited to determining "'whether, [given all the circumstances set forth in the affidavit before the bail commissioner] . . . there is a fair probability that contraband or evidence of a crime will be found in a particular place.'" United States v. Jones, 994 F.2d 1051, 1056 (3d Cir. 1993) (omission in original) (quoting Illinois v. Gates, 462 U.S. 213, 232 (1983)). We note that the Supreme Court has directed that "'the resolution of doubtful or marginal cases in this area should be largely determined by the preference to be accorded to warrants.'" Id. at 1057-58 (quoting United States v. Ventresca, 380 U.S. 102, 109 (1965)).

The requisite nexus between the items sought and Jones's residence can be "inferred by 'considering the type of crime, the nature of the items sought, the suspect's opportunity for concealment and normal inferences about where a criminal might hide stolen property.'" Id. at 1056 (quoting United States v. Jackson, 756 F.2d 703, 705 (9th

Cir. 1985)). We agree with the District Court that the information in the supporting affidavit demonstrated a nexus between the guns and Jones's residence and was not stale. The confidential informant reported that he or she had regularly observed Jones brandishing firearms. In confessing to killing Marcus Jones, Palmer confirmed that James Jones used firearms and had provided them to Palmer and others. Although Jones argues that "[t]here was simply no rational basis for the belief that [he] would have held on to this highly incriminating evidence [the guns] three months into a homicide investigation that was yet unsolved," Br. of Appellant at 32, the District Court held that in light of the informant's statement that he had seen Jones with firearms on several occasions, coupled with Palmer's statements that Jones had provided and taken away the guns used in the April 29 shooting, there was a sufficient probability that evidence of the shooting could be found in Jones's home. Moreover, we previously noted that, even absent any direct evidence of their location, firearms are "likely to be kept in a suspect's residence." Jones, 994 F.2d at 1056. We thus reject Jones's argument that the District Court erred in concluding that the search warrant was supported by probable cause.

II.

Jones's second argument is that the District Court erred in determining that he was not entitled to a hearing pursuant to Franks v. Delaware, 438 U.S. 154 (1978). To be entitled to a Franks hearing, a defendant must show that (1) the affidavit in support of the warrant contained statements or omissions that were deliberately false or demonstrated a reckless disregard for the truth and (2) the challenged statements or omissions were essential to the magistrate judge's finding of probable cause. Id. at 155-56; United States v. Calisto, 838 F.2d 711, 714 (3d Cir. 1988).

Jones sought a Franks hearing based on his allegation of one misstatement and one omission by Detective McDermott which Jones asserts were deliberately false or demonstrated a reckless disregard for the truth. Jones first focused on Detective McDermott's statement that "James Jones provided the guns, which he has possession of, giving Palmer a .22 caliber semi-automatic rifle with a 50-round magazine, Marcus Jones a 12-gauge shotgun, and James Jones and Lance Grant each had 'Tech 9' semi-automatic machine pistols with 32-round magazines." App. at 51 (emphasis added). Before the District Court, McDermott testified that he meant to write that "[James Jones] had possession of" the guns, and that his use of the present tense was a typographical error. App. at 181.

Jones next focused on the omission from McDermott's affidavit of information provided by Patrick Palmer. In response to the question, "Do you know what happened to the guns that were used on 4-29-97?" Palmer had replied, "James told me the day of Marcus'[s] funeral that he got rid of them, I'm not sure where though." App. at 47, 182. That statement was not included in the affidavit. In explaining his omission, McDermott testified that the confidential informant "had recently seen James Jones in the possession of guns and I thought that information was more recent than what Patrick Palmer [who had been in police custody for a car-jacking since May 14, 1997] was providing." App. at 183.

The District Court believed that a Franks hearing was unnecessary because Jones had not made the necessary preliminary showing. However, in light of Jones's argument, the District Court held a Franks hearing. The court found McDermott's testimony to be credible. With respect to McDermott's use of "has" instead of "had," the District Court concluded "Detective McDermott only meant to convey that Palmer said that the defendant had guns at the time of the shooting of Marcus Jones." App. at 13.

We note that the affidavit would still have supported a finding of probable cause, even if McDermott had written "had" and included Palmer's statement about Jones disposing of the guns. The "has" typo appears in the portion of the affidavit where McDermott relates Palmer's statements to police while in police custody. Because of its location in the affidavit, the incorrect statement of tense was unlikely to mislead the bail commissioner into concluding that Palmer had represented that Jones currently possessed the firearms. Taken in context, the tense of the verb was not essential to the bail commissioner's finding of probable cause.

With respect to McDermott's omission, the District Court concluded, "In omitting from his affidavit Palmer's statement that  that Jones got rid of the guns, McDermott was not trying to deceive the bail commissioner, who issued the search warrant. McDermott did not think that the statement was important to the decision to issue the

search warrant."  App. at 13.

We note, further, that while Jones may have communicated to Palmer that he had gotten rid of the guns associated with Marcus's death, Palmer was "not sure where."  On the other hand, as the bail commissioner was apprised, the confidential informant had recently claimed to have "observed James Jones with firearms on several occasions." App. at 50.  Because Palmer was unable to suggest the guns' location, the bail commissioner would have been reasonable in relying on Detective McDermott's expertise and the confidential informant's observations in assessing whether the weapons were located in Jones's residence.  McDermott observed in his affidavit in support of the warrant that, "by their nature, firearms are the type of article usually retained by the person in possession."  App. at 51.  As discussed above, this court has itself noted that firearms are often kept in a suspect's residence.  See Jones, 994 F.2d at 1056.

At the conclusion of the Franks hearing, the District Court concluded:

> On the basis of  finding of law  on the basis of McDermott's testimony, I find that he did not knowingly, intentionally or with reckless disregard of the truth, include false and misleading statements in the search warrant affidavit.  I find that the defendant has not established facts that challenge the presumed validity of the affidavit supporting the search warrant.  The search of the defendant's home on July 31st, 1997 was not unreasonable as it was executed pursuant to a search warrant in support of a probable cause, therefore, the post-arrest statement taken from Jones subsequent to the search was not the product of a [sic] unlawful search and, therefore, the defendant's motion to dismiss his post-arrest statement is denied.

App. at 14.

After careful review of the record, we see no reason to disturb those findings.

### III.

The District Court also ordered that Jones pay criminal monetary penalties of $40,789.49 as restitution under the Mandatory Victims Restitution Act (MVRA), 18 U.S.C.  3663A, 3664 (2002).  The MVRA requires that a district court specify the schedule of restitution payments after considering the defendant's financial resources, projected earnings, and financial obligations.  Id.; see also United States v. Coates, 178 F.3d 681, 684 (3d Cir. 1999) (observing that District Court's failure to "schedule restitution payments after taking into account the defendant's financial resources" constituted plain error).  Because the District Court failed to specify a schedule for Jones's repayments, the Government agrees that we should remand to provide the District Court an opportunity to do so.

### IV.

For the reasons set forth, we will affirm the District Court's judgment of conviction and sentence except that we will remand so that the court may specify a schedule for Jones to make repayments under the MVRA.

———————————————